# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | |
|---|---|
| **JAMES SWAIN RIEVES**<br><br>*Plaintiff*<br><br>v.<br><br>**TOWN OF SMYRNA, TENNESSEE,**<br>**POLICE CHIEF KEVIN ARNOLD,** in his official and individual capacity,<br>**RUTHERFORD COUNTY, TENNESSEE,**<br>**DISTRICT ATTORNEY JENNINGS JONES,** in his official and individual capacity,<br>**ASSISTANT DISTRICT ATTORNEY JOHN ZIMMERMANN,** in his official and individual capacity<br>*and*<br>**SHERIFF MIKE FITZHUGH,** in his official and individual capacity<br><br>*Defendants* | CASE NO. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Comes now the Plaintiff, JAMES SWAIN RIEVES, and for his Complaint would show as follows:

### PARTIES

1. Plaintiff JAMES SWAIN RIEVES is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as PLATINUM VAPOR, LLC, d/b/a CLOUD 9 HEMP in Smyrna, Tennessee.

2. Defendant Police Chief KEVIN ARNOLD is the highest law enforcement officer for the Town of Smyrna. He may be served with process at the Town of Smyrna Police Department, 400 Enon Springs Rd East, Smyrna, TN 37167.

3. Defendant JENNINGS JONES is the elected District Attorney for Rutherford County, Tennessee. He may be served with process at the Rutherford County District Attorney's office, 320 W Main St #100, Murfreesboro, TN 37130.

4. Defendant JOHN ZIMMERMANN is an Assistant District Attorney with the Rutherford County District Attorney's Office, and may be served there at 320 W Main St #100, Murfreesboro, TN 37130.

5. Defendant TOWN OF SMYRNA is a municipal city government entity operating pursuant to the laws of the State of Tennessee, and may be served via the City Mayor's office at 315 S Lowry St, Smyrna, Tennessee 37167.

6. Defendant RUTHERFORD COUNTY is a political subdivision of the State of Tennessee, and may be served with process at the County Executive's office located One Public Square, Room 101, Murfreesboro, Tennessee 37130.

## JURISDICTION

7. This action arises out of the mistreatment suffered by the Plaintiff at the hands of the Defendants in the City of Smyrna within Rutherford County, Tennessee.

8. This action arises under the United States Constitution and under the laws of the United States of America, particularly under the provisions of the Fourth and Fourteenth Amendments of the United States Constitution, and particularly under the Civil Rights Act, codified at 42 U.S.C. § 1983 *et seq*.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

11. During all times relevant herein, Mr. Rieves operated Platinum Vapor, LLC, doing business as Cloud 9 Hemp (hereinafter "CLOUD 9"), located at 105 Jefferson Street, Smyrna, Tennessee.

12. A significant portion of CLOUD 9's business involved the sale and distribution of industrial hemp products and derivatives, including cannabidiol (CBD), a non-psychoactive chemical derivative of industrial hemp.

13. Marijuana, which contains the psychoactive delta-9-tetrahydrocannabinol (THC) as well as the non-psychoactive CBD, is still illegal under Tennessee law. *See* T.C.A. § 39-17-402. However, Tennessee law differentiates between illegal marijuana and industrial hemp. Industrial hemp products and derivatives – including CBD – are legal to sell, possess, and consume. T.C.A. § 43-26-102 states:

(4) "Industrial hemp":
(A) Means the plants, plant parts, or whole plant extract, whether in manufacturing process or reconstituted, of the genera cannabis that do not contain a delta-9 tetrahydrocannabinol (THC) concentration more than three-tenths of one percent (0.3%) on a dry mass basis and that are grown:
(i) From seed or propagules from seed certified by a certifying agency, as defined in § 43-10-103;
(ii) From seed or propagules derived from landrace varieties of industrial hemp; or

(iii) By an institution of higher education in this state that offers a baccalaureate or post-graduate level program of study in agricultural sciences; and
(B) Includes any industrial hemp-derived products that do not contain more than three-tenths of one percent (0.3%) of delta-9 tetrahydrocannabinol (THC) in a topical or ingestible consumer product.

14. By way of analogy, chlorophyll extracted from a marijuana plant would be illegal. However, that does not mean chlorophyll extracted from the leaf of a maple tree is illegal.

15. On or about May 1, 2017, Officers of the Town of Smyrna Police Department (hereinafter "SPD") became aware that CLOUD 9 was selling CBD products.

16. During their investigation, the SPD found the following text information on CLOUD 9's website:

Cloud 9 Hemp does not sale or distribute any products that are in violation of the United States Controlled Substances Act (US CSA). Cloud 9 Hemp sells and distributes hemp-based products. US Government Patent #6,630,507: "cannabinoids as antioxidants and neuroprotectants"

Hemp oil and many other hemp products, such as seeds, fibers, clothing and composite materials. Hemp oil is legal. Non-psychoactive hemp is not included in Schedule 1 of the Controlled Substances Act. Hemp is legal to import, sell, and consume in the United States. Our hemp products are considered food or dietary supplements, and our CBD is a natural constituent of the hemp plant / hemp stem & stalk oil and is not synthetic or artificial; therefore, our naturally-derived, industrial hemp-based CBD is exempt from Schedule 1 just as any other constituent of non-psychoactive industrial hemp is.

The United States Court of Appeals for the Ninth Circuit in Hemp Industries Assn., v. Drug Enforcement Admin., 357 F.3d 1012 (9th Cir. 2004), recognized that "non-psychoactive hemp [that] is derived from the 'mature stalks' or is 'oil and cake made from the seeds' of the Cannabis plant fits within the plainly stated exception to the CSA definition of marijuana." Id. at 1017. As such, the court determined that the government (i.e. DEA) has no authority under current law to completely

ban "Cannabinoids" that are found within the parts of Cannabis plants that are excluded from the CSA's definition of 'marijuana' or that is not synthetic." Id. at 1018. Industrial hemp is legal to import under the Controlled Substances Act (CSA). Since 1937, the federal statute controlling marijuana has excluded the stalk, fiber, oil and sterilized seed of the plant Cannabis sativa L., commonly known as hemp, from the definition of marijuana. 21 U.S.C. § 802(16), and again in reference to 2-6-04 Ninth Circuit Court of Appeals ruling. On March 28, 2003, the Hemp Industries Association, several hemp food and body care companies and the Organic Consumers Association filed an Urgent Motion for Stay in the 9th Circuit Court of Appeals. The industry was optimistic that the Court would grant the Stay, given previous Court action on the issue. In the meantime, the law of the land affirming hemp food's legality remained in effect. On February 6, 2004 the Ninth Circuit Court of Appeals issued a unanimous decision in favor of the HIA in which Judge Betty Fletcher wrote, "[T]hey (DEA) cannot regulate naturally-occurring THC not contained within or derived from marijuana-i.e. non-psychoactive hemp is not included in Schedule I. The DEA has no authority to regulate drugs that are not scheduled, and it has not followed procedures required to schedule a substance. The DEA's definition of "THC" contravenes the unambiguously expressed intent of Congress in the Controlled Substances Act (CSA) and cannot be upheld". On September 28, 2004 the HIA claimed victory after DEA declined to appeal to the Supreme Court of the United States the ruling from the Ninth Circuit Court of Appeals protecting the sale of hemp-containing foods. Industrial hemp remains legal for import and sale in the U.S.

13. Despite this unambiguous, technical explanation of CLOUD 9's products' legality, and despite the plain meaning of Tennessee statutes, the SPD continued its investigation for four months.

14. SPD officers learned that CBD products identical to those distributed by CLOUD 9 were available for purchase at local gas stations, markets, and even on Amazon.com.

15. The SPD has an entire division dedicated solely to drug enforcement.

16. The most common illegal drug in Smyrna (and Rutherford County) is Marijuana.

17. The training provided by the Town of Smyrna failed to educate its police officers on the difference between legal industrial Hemp and illegal Marijuana.

18. The training provided by the Town of Smyrna failed to educate its police officers that industrial hemp and hemp derivatives may contain up to 0.03% THC (thus testing "positive" for THC) while violating no State or Federal laws.

19. These failures exposed citizens of Smyrna, including Plaintiff Rieves, to an extreme risk of constitutional deprivations.

20. On or about August 15, 2016, Smyrna Police Chief Kevin Arnold received correspondence from a Florida municipal police department indicating that CLOUD 9 was again selling products that "tested positive" for THC.

21. Bolstered by the technically inconclusive information provided by another ill-informed law enforcement agency, the Smyrna Police Department's Criminal Investigations Unit set about preparing for a raid on the premises of CLOUD 9.

22. With direct supervision and approval by Chief Kevin Arnold, on September 26, 2017, SPD officers obtained a search warrant for "marijuana and marijuana derivatives, extracts, and tinctures," based

upon sworn statements that marijuana derivatives were being sold from COULD 9's Smyrna location.

23. On September 26, 2017, multiple officers from the Town of Smyrna Police Department conducted a raid at 105 Jefferson Street, seizing approximately $60,000.00 worth of merchandise and equipment, and crippling Mr. Rieves' lawful business enterprise.

24. Mr. Rieves explained to the police how his enterprise complied with state and federal law and how all his products were legal.

25. No criminal charges were brought against him at this time, and Mr. Rieves believed that, once the SPD realized the mistake, everything would return to normal.

26. Mr. Rieves, despite suffering serious harm to his business, purchased more inventory and resumed the sale of his industrial hemp derivatives because he had a family to feed and he knew that he was not breaking the law. No further police action was taken against Mr. Rieves for the remainder of 2017.

27. Unbeknownst to Mr. Rieves, an investigation known as "OPERATION CANDY CRUSH" was proceeding as a collaborative law enforcement effort among the Rutherford County District Attorney's Office, and the Smyrna, La Vergne, and City of Murfreesboro Police Departments.

28. The basis of that investigation was the sale and distribution of CBD products within Rutherford County and its constituent cities.

29. During that investigation, and prior to the raids, Rutherford County undercover narcotics officers (hereinafter "RCSO #1") along with another officer, RCSO #2, who were leading the investigation, expressed serious concerns to the Rutherford County District Attorney's Office.

30. These concerns included the fact that CBD is not listed under Tennessee statutes as a controlled substance, that **Amazon and other major online retailers openly sell identical products**, and despite the fact that they contain trace amounts of THC, the products may be entirely legal.

31. Rutherford County District Attorney John Zimmermann participated extensively in the CANDY CRUSH investigation, directing officers to gather specific products and to move the investigation along.

32. After RCSO #1 expressed his concerns to the District Attorney's Office, ADA Zimmermann explained to RCSO #1 that the Tennessee Bureau of Investigation had tested these products and that they were illegal.

33. Still harbor, RCSO #1 delayed the investigation.

34. On January 12, 2018, a meeting was conducted to discuss the legality of the CBD products. Attendees included a TBI chemist, a TBI lawyer, RCSO #1, ADA John Zimmermann, and another member of the Rutherford County District Attorney's office.

35. At this meeting, the TBI chemist explained that he could only test for the presence of THC, but he could not determine the *percentage* of THC.

36. The TBI's tests were, therefore, inconclusive as to whether the CBD products from Mr. Rieves were illegal.

37. Major Bill Sharp wished to postpone further action in the CANDY CRUSH case.

38. ADA Zimmermann and his colleague from the District Attorney's office discussed the investigation with the elected Rutherford County District Attorney Jennings Jones.

39. In spite of the concerns expressed by rank and file law enforcement officers, District Attorney Jones and ADA Zimmermann convened a meeting with the Rutherford County Sheriff Mike Fitzhugh and the City of Smyrna Police Chief Kevin Arnold, where they pressured the law enforcement agencies into continuing OPERATION CANDY CRUSH.

40. During the investigation, to persuade other members of the investigatory team to move forward, ADA Zimmermann advised that "they were not going after Amazon," and that the defendants would end up coming to court and taking a plea in order to get their businesses opened back up.

41. All three policymakers (Jones, Arnold, and Fitzhugh) ultimately ratified the OPERATION CANDY CRUSH investigations and prosecution of Mr. Rieves prior to the February 12, 2018 raid.

42. On February 12, 2018, another raid was conducted on CLOUD 9's Jefferson Street business address as part of OPERATION CANDY CRUSH.

43. As they did on September 26, 2017, the Smyrna Police Department raided Cloud 9's premises and seized tens of thousands of dollars in inventory, along with other items.

44. The raid was based on a search warrant and nuisance abatement petition wherein officers of the Rutherford County Sheriff's Department swore that CLOUD 9 was involved in the sale and distribution of Marijuana derivatives.[1]

45. This time, criminal indictments were obtained against Mr. Rieves and others for selling CBD products.

46. These petitions, applications for search warrants, and requests for indictments systematically and intentionally withheld vital information that was, by this time, known to the affiants:

    a. The TBI's tests were inconclusive;

    b. Industrial hemp and its derivatives may contain up to 0.03% THC;

    c. Industrial hemp is an alternative source of CBD, and CBD derived therefrom is legal.

---

[1] This is problemtic considering that neither the Smyrna Police Department nor the Rutherford County District Attorney's Office sought charges against Mr. Rieves from the September 2017 raid, despite seizing his products for over four months. That seizure never produced evidence of marijuana (or marijuana derivative) distribution by CLOUD 9.

**47.** Rutherford County Sheriff Mike Fitzhugh and Smyrna Police Chief Kevin Arnold held a press conference, standing beside Rutherford County District Attorney Jennings Jones, where they gloated about "OPERATION CANDY CRUSH," and accused Mr. Rieves of selling illegal narcotics to children.

**48.** ADA Zimmermann brought his friends to tour the inside of one of the businesses that were padlocked as a result of OPERATION CANDY CRUSH.

**49.** The Plaintiff was arrested, transported, and booked into the Rutherford County Adult Detention Center, where he was required to post a bond before he was released.

**50.** The Plaintiff was required to abide by conditions of release and was required to hire lawyers, attend court and defend these charges.

**51.** Mr. Rieves obtained unqualified dismissals of all charges.

**52.** Mr. Rieves property was eventually returned in September 2018.

**53.** Mr. Rieves' business was crippled, and his reputation is irredeemably blemished.

**54.** Mr. Rieves suffered severe emotional distress, loss of enjoyment of life, and loss of income to CLOUD 9.

)))
)))
)))
)))

# COUNT I: VIOLATION OF CIVIL RIGHTS – DELIBERATE INDIFFERENCE
## FAILURE TO TRAIN, FAILURE TO INVESTIGATE
## DEFENDANTS TOWN OF SMYRNA AND RUTHERFORD COUNTY
## (42 U.S.C. 1983)

47. Plaintiff incorporates by reference all allegations above as if restated fully herein verbatim.

48. In committing the acts above-described, Rutherford County and City of Smyrna acted under color of state law and with deliberate indifference to Plaintiff's protected rights under the Fourth and Fourteenth Amendments to the United States Constitution including the right to be free from unreasonable searches and seizures.

49. Both Rutherford County and the Town of Smyrna failed to investigate the case during the four months and eighteen days they possessed the materials seized from CLOUD 9 on the September 2017 raid.

50. The September 2017 and February 2018 incidents were the result of the Town of Smyrna and the Rutherford County Sheriff's Department failures to train its officers on the differences between industrial hemp and the most common illegal drug, marijuana. This failure exposed Plaintiff Rieves to deprivations of his constitutional rights.

51. Furthermore, all defendants failed to properly investigate the legality of CBD such that they were deliberately indifferent to the protected constitutional rights of Plaintiff Rieves.

52. This failure to train and failure to investigate are the direct and proximate cause of Plaintiff Rieves' damages sustained as a result of the falsely-procured

search warrant. Had the officers been properly trained, none would have participated in this prosecution, despite cajoling by members of the District Attorney's Office.

### COUNT II: VIOLATION OF 4TH AMENDMENT RIGHTS TO BE FREE FROM FALSE ARREST, UNLAWFUL SEIZURE AND UNLAWFUL PROSECUTION ALL DEFENDANTS (42 U.S.C. 1983)

53. Plaintiff incorporates by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

54. As stated above, Defendants Jennings Jones and John Zimmermann undertook investigatory functions usually conducted by police. Acting under color of law, they pushed law enforcement agencies to move OPERATION CANDY CRUSH forward, despite the serious and legitimate concerns raised by the investigating police officers.

55. By the time Rutherford County and the Town of Smyrna conducted the February 2018 raid, they knew they were intentionally preying on local small businesses with the expectation that they would take a plea to get their businesses opened back up.

56. Rutherford County Sheriff's Department Officers as well as City of Smyrna Police Officers knowingly participated in the illegal seizure, arrest, criminal prosecution and nuisance petition against Mr. Rieves.

57. Mr. Rieves' false arrest and unlawful prosecution were sanctioned and ratified by the highest-level policymakers for Smyrna and Rutherford County during the meeting among District Attorney Jones and the

**58.** These actions violate Mr. Rieves' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### COUNT III: CONSPIRACY TO VIOLATE PLAINTIFF'S 4TH AMENDMENT RIGHTS TO BE FREE FROM FALSE ARREST, UNLAWFUL SEIZURE AND UNLAWFUL PROSECUTION
### DEFENDANTS JONES, ZIMMERMANN, ARNOLD, AND FITZHUGH (INDIVIDUAL AND OFFICIAL CAPACITIES)
### (42 U.S.C. 1983)

**59.** Plaintiff incorporates by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

**60.** When District Attorney Jones and ADA Zimmermann set the meeting with the law enforcement chiefs and they agreed to continue OPERATION CANDY CRUSH, they entered a conspiracy to violate the civil rights of Plaintiff Rieves and others engaged in the lawful sale of industrial hemp derivatives.

**61.** When the officers conducted the raids and seizures on February 12, 2018, acts in furtherance of the conspiracy materialized and violated the constitutional rights of Plaintiff Rieves.

### DAMAGES

**62.** As a result of the conduct of each defendant named in this case in Counts I, II, and III, Plaintiff Rieves has suffered:

    a. Serious mental and emotional distress

    b. Loss of business income

    c. Loss of enjoyment of life

    d. Diminished reputation and standing in the community

e.  Out-of-pocket expenses associated with posting bail, defending criminal charges, and rebuilding his business.

WHEREFORE, your Plaintiff requests:

I. That a jury of 12 persons be empaneled to try this case;

II. A declaratory judgment that Defendants' conduct violated Plaintiff's protected constitutional rights;

III. For nominal damages;

IV. For compensatory damages in the amount of $500,000.00;

V. Reasonable attorney's fees and litigation expenses;

VI. Such other and general relief as the court deems just.

Respectfully submitted,

_____
Frank R. Brazil, #34586
Wesley Clark, #32611
BRAZIL CLARK, PLLC
2706 Larmon Avenue
Nashville, TN 37204
615-730-8619
615-514-9674 (fax)
frank@brazilclark.com
wesley@brazilclark.com