# Jim Todd

**From:** Beres, Nick <nick.beres@newschannel5.com>
**Sent:** Thursday, March 01, 2018 10:10 AM
**To:** Jim Todd
**Subject:** Fwd: Response to CBD

Sent from my iPhone

Begin forwarded message:

> **From:** "Beres, Nick" <nick.beres@newschannel5.com>
> **Date:** February 28, 2018 at 7:02:19 PM CST
> **To:** "josh@labcanna.com" <josh@labcanna.com>
> **Subject: Fwd: Response to CBD**
>
> Response from TBI.
>   Let me know what you think?
> Sent from my iPhone
>
> Begin forwarded message:
>
>> **From:** WTVF Newsroom <newsroom@newschannel5.com>
>> **Date:** February 28, 2018 at 1:51:54 PM CST
>> **To:** newsdept <newsdept@newschannel5.com>
>> **Subject: Fw: Response to CBD**
>>
>> **From:** TBI Media <TBI.Media@tn.gov>
>> **Sent:** Wednesday, February 28, 2018 1:49 PM
>> **To:** WTVF Newsroom
>> **Subject:** Re: Response to CBD
>>
>> Here's our statement:
>>
>> In this matter, it is inaccurate for the local stakeholders in these cases to assert they made decisions in this case unaware of the limits of our forensic work.
>>
>> The role of the Tennessee Bureau of Investigation in laboratory analysis is to objectively analyze submitted evidence. We make no determination of the legality of situations involving the evidence we examine, and, in fact, our Forensic Scientists are rarely aware of the circumstances involving the evidence submitted for analysis.

Our laboratory analysis can only determine relevant compounds, not the particular origin of those substances. So, in this matter, we are not able to determine whether the CBD in these cases originated from industrial hemp, illicit marijuana, or synthetic production. In fact, such a determination is beyond the capability of contemporary drug identification. Still, the identified CBD, as a derivative of marijuana, may be considered a Schedule VI substance under the Tennessee Code, which is why our agency reported it that way to the local law enforcement agency and District Attorney General.

In the midst of this process, we clearly explained – in detail – the limitations of our analysis to all stakeholders. We did so to ensure they fully knew that, though we could identify CBD, we were not able to identify its origin.

We also explained to them the nuance of the included schedule on our lab reports, which are provided as a courtesy. In this instance, we listed the schedule out of an abundance of caution because the sample could have met the standard for schedule as spelled out in the law. Local agencies and prosecutors – including those in Rutherford County – are well aware of that nuance.

During the recent news conference on these cases, General Jones acknowledged himself that a substance being identified as a particular schedule does not make it inherently illegal. The circumstances of the possession or transfer – as determined by the local law enforcement agency and interpreted by the District Attorney General – make something "illegal."

Again, to be clear: TBI lab reports objectively determine the compound present, but in no way are statements of compound origin, circumstances of possession, or guilt or innocence. Though we identified the substance and the relevant schedule, we made no determination about the legality of the substance or the circumstance in Rutherford County. That was a decision solely made -- as in all cases -- by the local agency and District Attorney General.

Regards,
Josh DeVine

Sent from my iPhone. Please excuse any typos.

On Feb 28, 2018, at 1:08 PM, WTVF Newsroom <newsroom@newschannel5.com> wrote:

> Hello,
>
> Does the TBI have a statement to share regarding the CBD investigation in Rutherford Co. ("Operation Candy Crush") and a response to the District Attorney's letter indicating TBI is to blame.

Thank you,
Emerald

*Assignment Desk*
WTVF-TV NewsChannel 5 Network
474 James Robertson Pkwy
Nashville, TN 37201
615.248.5281
Follow us on Twitter at **@NC5**

Scripps Media, Inc., certifies that its advertising sales agreements
do not discriminate on the basis of race or ethnicity. All
advertising sales agreements contain nondiscrimination clauses.

Scripps Media, Inc., certifies that its advertising sales agreements do not discriminate on the basis of race or ethnicity. All advertising sales agreements contain nondiscrimination clauses.