IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| JAMES SWAIN RIEVES, ET AL. | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-cv-0965 |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| TOWN OF SMYRNA, TENNESSEE, ET AL. | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS ON BEHALF OF
DEFENDANTS RUTHERFORD COUNTY, TENNESSEE
AND SHERIFF MICHAEL FITZHUGH**

## I. PRELIMINARY STATEMENT

The Plaintiffs' First Amended Complaint (herein, the "Amended Complaint") alleges claims under 42 U.S.C. §1983 and §1985 for violations of the Fourth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and conspiracy theories. The alleged claims surround arrests and associated activities arising out of events in Rutherford County, Tennessee known as "Candy Crush." The Plaintiffs have asserted claims against Sheriff Michael Fitzhugh in his individual and official capacities and against Rutherford County.

The claims against Sheriff Michael Fitzhugh in his individual capacity must be dismissed and are barred by the doctrines of quasi-judicial immunity and qualified immunity. The claims against Sheriff Fitzhugh in his official capacity and against Rutherford County fail under the

standards contained in *Monell v. Dept. of Soc. Servs. of New York Cty* because the Amended Complaint contains no allegations of a municipal policy or custom that caused injury or that were the moving force behind any alleged constitutional deprivation. *See Monell v. Dept. of Soc. Servs. of New York Cty.*, 436 U.S. 658, 690 (1978). The equal protection claim must be dismissed under the same theories and because there is no constitutionally protected category based on business size. *See* Amended Complaint at ¶110 (where the Plaintiffs claim they were targeted as small businesses). Finally, the conspiracy claim fails and must be dismissed for all of these reasons and because the *prima facie* elements of a conspiracy claim, which must be pled with specificity, are not made in this Amended Complaint.

## II.     FACTUAL ALLEGATIONS

The Plaintiffs assert they are owners of convenience stores, tobacco stores and "vape shops" that sold a variety of tobacco products. *See* Amended Complaint at ¶26 (Doc. 5). The Plaintiffs assert they sold industrial hemp derived products, including products containing cannabidiol ("CBD"). *Id*. ¶27. As part of an investigation that started in February of 2017, the Plaintiffs assert that certain CBD products were purchased from Rutherford County stores and submitted for lab testing to the Tennessee Bureau of Investigation. *Id*. at ¶28-29.

The Amended Complaint asserts that after the lab report was received, Rutherford County agents met with Assistant District Attorney John Zimmerman to "seek prosecutorial direction on the case." *Id*. at ¶32. The Amended Complaint asserts that Zimmerman requested more similar purchases and that the Rutherford County Sheriff's officers brought up that Amazon was selling the same products. *Id*. at ¶33-34. The Amended Complaint asserts that District Attorney Zimmerman "directed the actions of the law enforcement officers." *Id*. at ¶35. The Complaint also asserts that these officers "sought legal advice from prosecution" and that

2

there was an expression that the products were illegal. *Id*. at ¶36. The Amended Complaint asserts that the Rutherford County Sheriff's Office had concerns about the operation. *Id*. at ¶40.

Major Sharp raised specific concerns to the prosecutors about the possibility of indicting and seizing property where the TBI may later refuse to testify that substances were illegal. *Id*. at ¶44. According to the Amended Complaint, the certainty of whether the substances were illegal continued after a meeting with the TBI but the "ADA allegedly turned and stated to [the detective] that this stuff is illegal and we are going forward with this." *Id*. at ¶48.

The Amended Complaint alleges that "Operation Candy Crush" was executed on February 12, 2018. *Id*. at ¶52. The legal action was taken in accordance with a court order styled "temporary injunction and order to padlock premises" signed by Judge Royce Taylor. *Id*. at ¶66. These orders were granted by Judge Taylor based on a "Petition for Abatement of Nuisance" filed by Defendants Zimmerman and Jones. *Id*. at ¶67. The Amended Complaint asserts that certain statements in the Petition for Abatement of Nuisance were false. *Id*. at ¶68-69. A Rutherford County Sheriff's detective, Curtis Beane, signed an "Affidavit in Support of Petition for Abatement of Nuisance and Order to Search Premises" in support of the petitions. *Id*. at ¶70. The Amended Complaint alleges that certain statements in the affidavit were false. *Id*. at ¶71-72. Ultimately, all charges related to this matter were dismissed and expunged. *Id*. at ¶83.

### III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. *Golden v. Cty. of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court disavowed the oft-quoted Rule 12(b)(6) standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which had previously

declared that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief." *See Ass'n of Cleveland Firefighters v. County of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). Instead, *Twombly* held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

## IV. ARGUMENT

### A. The Plaintiffs' Claims against Sheriff Fitzhugh in his Individual Capacity must be Dismissed and are Barred Based on Quasi-Judicial Immunity and Qualified Immunity.

The claims against Sheriff Fitzhugh in his individual capacity must be dismissed based on quasi-judicial immunity. Judges are absolutely immune from civil suits for money damages including §1983 suits. *See Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997); *Mireles v. Waco*, 502 U.S. 9, 9 (1991). Absolute immunity extends to actions arising out of their performance of judicial functions. *Huffer v. Bogen*, 503 Fed. Appx. 455, 458 (6th Cir. 2012). This far reaching protection is said to be justified "by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *See Tunis*, 113 F.3d at 1440 (*quoting Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997)). To that end, judicial immunity applies even to judicial acts performed maliciously, corruptly, in bad faith, or in error. *See Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).

4

While judges are absolutely immune from liability, "[o]ne who acts as a judge's designee, and who carries out a function for which the judge is immune, is likewise protected" under quasi-judicial immunity. *See Bogen*, 503 Fed. Appx. 455, 461 (6th Cir. 2012) (*quoting Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997)). Said another way, "absolute judicial immunity has been extended to non-judicial officers who perform 'quasi-judicial' duties." *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). Quasi-judicial immunity applies to those performing tasks so integral or intertwined with the judicial process they are considered an arm of the judicial officer who is immune. *Id*.

In determining application of quasi-judicial immunity, the Supreme Court has endorsed a "functional" approach. *Id*. This approach requires a court to look to "the nature of the function performed, not the identity of the actor who performed it." *Id*. (*quoting Buckley v. Fitzsimmons*, 113 S. Ct. 2606, 2613 (1993)). The Sixth Circuit has held that "an official is entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.'" *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000) (*quoting Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). In this regard, the Sixth Circuit Court has stated:

> It does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing and relying on that determination liable for failing to question the judge's findings. This would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law.

*Bush*, 38 F.3d at 848. Furthering this application, the Sixth Circuit has said, "law enforcement officials are entitled to absolute quasi-judicial immunity when they act pursuant to a valid court order." *Cooper*, 203 F.3d at 950.

5

The actions of Sheriff Fitzhugh taken pursuant to a court order are entitled to quasi-judicial immunity. As an initial matter, virtually all of the allegations in the Amended Complaint related to the Sheriff's office are about various deputies and not Sheriff Fitzhugh personally. Sheriff Fitzhugh cannot have individual liability for the actions of his deputies as there is no *respondeat superior* liability in a §1983 action. *See Monell*, 436 U.S. at 689, 693. Moreover, personal liability requires personal involvement and more than merely an alleged right to control employees. *See Knott v. Sullivan*, 418 F.3d 561, 574 (6th Cir. 2005); *see also Alexander v. Carter for Byrd*, 733 Fed. Appx. 256, 263, 267 (6th Cir. 2018) (where the court said that §1983 liability cannot be based on the actions of another or a theory of *respondeat superior*).

The Amended Complaint asserts the Sheriff somehow violated the Plaintiffs' Fourth Amendment rights by seizing property and padlocking the doors of their businesses.[1] More important, any actions taken by Sheriff Fitzhugh toward seizing property or padlocking the Plaintiffs' premises were done pursuant to a court order signed by Judge Royce Taylor. *Id.* at ¶66. The Amended Complaint admits that such orders were granted by Judge Taylor. *Id.* at ¶67. The Sheriff is statutorily obligated to carry out orders of the courts of record. *See* Tenn. Code Ann. §8-8-201(a)(1). A sheriff's "disobedience" of any such command is punishable as contempt of court. *See* Tenn. Code Ann. §8-8-207. Quasi-judicial immunity protects the Sheriff individually for actions taken pursuant to this valid court order. *Cooper*, 203 F.3d at 950. Because the actions taken by Sheriff Fitzhugh were in direct response to a court order, the actions are precisely the type entitled to quasi-judicial immunity. *See e.g. Mandola v. County of Nassau*, 222 F.Supp.3d 203, 215-217 (E.D. New York 2016) (where the court applied quasi-

---

[1] In furtherance of this, it is alleged that two members from the District Attorney's office met with the Sheriff and two chiefs and Operation Candy Crush was thereafter executed on February 12, 2018. *See* Amended Complaint at ¶50. There is no specific allegation as to how this meeting, if at all, relates to Sheriff Fitzhugh's alleged violations of any Plaintiffs' constitutional rights.

6

judicial immunity to sheriff's deputies executing a court issued arrest warrant). The claims against Sheriff Fitzhugh individually must be dismissed.

The Sheriff is also entitled to quasi-judicial immunity against any allegations related to the Plaintiffs' arrests. The Amended Complaint is devoid of specific factual allegations about the arrests other than the fact they occurred. However, to the extent the Amended Complaint is intended to imply that the Fourth Amendment rights of Plaintiffs were violated as a result of any arrests and that Sheriff Fitzhugh has personal liability, those claims also fail. The Office of Professional Responsibility's Summary of Investigation incorporated into the Amended Complaint by reference points to sealed grand jury indictments as the source of probable cause. *See* Summary of Investigation at 6 (Doc. 5-1). The Sixth Circuit has held that a grand jury indictment conclusively determines the existence of probable cause. *See Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006). Where probable cause exists, the resulting arrests comply with the Fourth Amendment. *See Gerstein v. Pugh*, 420 U.S. 103, 111-115 (1975) (discussing generally the existence of probable cause complying with the Fourth Amendment). Therefore, to the extent the Amended Complaint is intended to allege that Sheriff Fitzhugh was personally involved in unlawful arrests, those claims fail and must be dismissed.

Sheriff Fitzhugh is also immune from liability in his individual capacity under the doctrine of qualified immunity. Qualified immunity shields government officials from personal liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Loy v. Sexton*, 132 Fed. Appx. 624, 626 (6th Cir. 2005); *Bush*, 38 F.3d at 848). The issue of qualified immunity is essentially a legal question for the Court to resolve. *See Leis*, 556 F.3d at 494.

7

There is two-prong analysis to determine qualified immunity. First, the Court must consider a threshold question of whether the facts alleged show that the official's conduct violated a constitutional right. *See Sexton*, 132 Fed. Appx. at 626. If there is no showing of a constitutional violation, then the qualified immunity inquiry ends. *Id*. If, on the other hand, the facts viewed in the light most favorable to the plaintiff establish such a violation, then the Court must still determine whether the right was so clearly established that a reasonable official would have known that his conduct would violate that right. *Id*. Where a defendant has raised qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *See Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006). Moreover, the plaintiff has the burden of showing that a right is clearly established. *Leis*, 556 F.3d at 494.

In the context of arrest warrants, the Supreme Court "affords officials broad qualified immunity protection." *Tunis*, 113 F.3d at 1448. The Court is to apply an "objective reasonableness" test. *See id.* at 448. To that end, "[o]nly when the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Id*. (*quoting Malley v. Briggs*, 475 U.S. 335, 344-45 (1986)). Qualified immunity also applies to a prosecution. For example, qualified immunity applies where information is submitted to a prosecutor that results in a prosecution. *See Kinkus v. Village of Yorkville, Ohio*, 289 Fed. Appx. 86, 91 (6th Cir. 2008).[2]

In the case at bar, the Plaintiffs' allegations fail the threshold question of whether the Sheriff's conduct violated a constitutional right. As stated previously, the precise allegations

---

[2] Who has the authority to make the prosecution decision is also relevant. The Sixth Circuit has held that a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring the charges as long as the information submitted to the prosecutor was truthful. *See Kinkus*, 289 Fed. Appx. at 91. In a similar way, Sheriff Fitzhugh cannot be personally liable for DA's decision to prosecute.

8

against the Sheriff in his individual capacity are scarce and somewhat difficult to ascertain from the Amended Complaint. It requires some assumption on what actions the Sheriff is personally alleged to have performed that caused a constitutional violation. As stated above, a government official is presumed to have qualified immunity unless the Plaintiff can make the requisite showing that the official's conduct violated a constitutional right.

In order to proceed on the Fourth Amendment false arrest and unlawful prosecution claims, the Plaintiffs must allege that there was no probable cause to support the arrest and prosecution. *See Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003). However, no such valid claims can stand here because of the grand jury indictment(s). As to arrests following indictment, it "has been long settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purposes of holding the accused to answer.'" *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (*quoting Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)).[3] Probable cause is presumed to exist because of the grand jury indictments. If probable cause exists, there is no Fourth Amendment violation for which the Sheriff could be personally liable.

The Sheriff cannot have individual liability for the prosecution of Plaintiffs or for filing the nuisance petition. The decision to prosecute a case in Tennessee lies with the prosecutor – not the Sheriff. *See State v. Superior Oil, Inc.*, 857 S.W.2d 658, 660 (Tenn. 1994) (where the Supreme Court said "the decision whether to prosecute . . . rests entirety within the discretion of the prosecution."). Moreover, information submitted to the prosecutor also does not ordinarily

---

[3] To the extent the Complaint is intended to imply that the Sheriff individually and improperly participated as a grand jury witness, there can be no associated constitutional violation. Citing Supreme Court precedent, the Sixth Circuit has concluded that "a grand jury witness has absolute immunity from any §1983 claim based on witness testimony." *See Vaughan v. City of Shaker Heights*, 514 Fed. Appx. 611, 613 (6th Cir. 2013) (*quoting Rehberg v. Paulk*, 132 U.S. Ct. 1497, 1506 (2012)). Therefore, as concluded by the Sixth Circuit in *City of Shaker Heights*, any §1983 claim against the Sheriff premised upon grand jury testimony fails and must be dismissed. *Id*. at 613.

9

give rise to liability. *See Kinkus*, 289 Fed. Appx. at 91. Thus, qualified immunity protects the Sheriff from allegations related to the prosecution itself. The Sheriff also cannot have liability for pursuit of the Petition to Abate the Nuisance. Pursuant to the statute, the Sheriff did not even have standing to bring the Petition to Abate the Nuisance that was brought by the District Attorney. *See* Tenn. Code Ann. §29-3-102.[4]

The Complaint makes several allegations about comments allegedly made by Sheriff Fitzhugh at a press conference. *See* Amended Complaint at ¶52-58. Exactly how these statements are tied to the Plaintiffs' Fourth or Fourteenth Amendment rights is unclear. Nonetheless, statements made at a press conference, even if defamatory, would not give rise to a §1983 action as a result of Fourth or Fourteenth Amendment violations. Defamation is a state law claim – not a federal constitutional claim. The Amended Complaint makes no separate defamation claim under state law. *See, e.g. Womack v. Conley*, 595 Fed. Appx. 489, 495-96 (6th Cir. 2014) (where the court addressed a defamation claim under Kentucky law separately from the §1983 claim). As a result, the Amended Complaint makes no valid claim that Sheriff Fitzhugh's conduct violated a constitutional right and he is, therefore, entitled to qualified immunity. *See Sexton*, 132 Fed. Appx. at 626[5].

---

[4]Tennessee Code Annotated §29-3-102 reads as follows:

> The jurisdiction is hereby conferred upon the chancery, circuit, and criminal courts and any court designated as an environmental court pursuant to Chapter 426 of the Public Acts of 1991, Chapter 212 of the Public Acts of 1993 or Chapter 667 of the Public Acts of 2002 to abate the public nuisances defined in §29-3-101, upon petition in the name of the state, upon relation of the Attorney General and Reporter, or any District Attorney General, or any city or county attorney, or without the concurrence of any such officers, upon the relation of ten (10) or more citizens and freeholders of the county wherein such nuisances may exist, in the manner herein provided.

[5] Assuming, *arguendo*, the Amended Complaint could be read to establish a constitutional violation, the Amended Complaint still fails to demonstrate that the right was so clearly established that a reasonable official would have known that his conduct would violate that right. *Id*. There are no allegations that suggest the Sheriff knew that the court orders or arrest warrants were invalid or that any actions taken by the prosecutors were improper.

10

The Amended Complaint alleges that the Petition for Abatement of Nuisance was accompanied by an affidavit in support signed by a Rutherford County Sheriff's detective. *See* Amended Complaint at ¶70. There is no allegation that Sheriff Fitzhugh executed such an affidavit in his individual capacity or that he was even aware of the content of the affidavit. *See generally* Amended Complaint. However, even if Sheriff Fitzhugh was individually involved, it would still not subject him to individual liability under §1983. In the context of arrest warrants, for example, courts have subscribed to an "objective reasonableness" test that provides: "[o]nly where the warrant application is so lacking any indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Tunis*, 113 F.3d at 1448. The affidavit at issue here was related to a civil remedy in a Petition for Abatement of Nuisance. Even if it was related to the criminal prosecution, the Amended Complaint nowhere alleges that the petition or the associated affidavit were so lacking in any indicia of probable cause as to render Sheriff Fitzhugh individually liable. Simply put, Sheriff Fitzhugh could not have individually violated the Plaintiffs' constitutional rights under the Fourth Amendment *vis a vie* an affidavit attached to a civil Petition for Abatement of Nuisance signed by one of his deputies. *See Monell*, 436 U.S. at 689, 693 (making clear there is no *respondeat superior* liability in a §1983 claim).

Many of the Fourth Amendment allegations made in the Amended Complaint simply are not related to actions taken by Sheriff Fitzhugh in his individual capacity. To the extent they are, the claims are barred by quasi-judicial immunity and/or qualified immunity. As a result, all of the claims against Sheriff Fitzhugh in his individual capacity must be dismissed.

### B. The Plaintiffs' Equal Protection Claim against Sheriff Fitzhugh must be Dismissed.

The Plaintiffs allege violations of the Equal Protection Clause of the Fourteenth Amendment. *See* Amended Complaint at Count II (Doc. 5). The Equal Protection Clause of the United States Constitution demands that "all persons similarly situated should be treated alike." *See Jennejahn v. Village of Avon*, 575 F.Supp.2d 473, 482 (W.D. NY 2008) (*quoting City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). An equal protection claim based upon selective enforcement arises if (1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *See Jennejahn*, 575 F.Supp.2d at 482. The key issue in an equal protection claim alleging selective enforcement is impermissible motive. *Id*.

The Amended Complaint does not contain sufficient factual allegations to even understand the basis for the Equal Protection Claim. The plaintiff must present more than "labels and conclusions." *Twombly*, 550 U.S. at 545. Rather, the allegations must be enough to raise his right to relief above the "speculative level." *Id*. The Plaintiffs' Equal Protection claim fails to meet the *Twombly* standard and should be dismissed on this basis alone.

In this case, the Plaintiffs apparently allege an equal protection claim based on the size of the businesses involved. *See* Amended Complaint at ¶110-112. The size of one's business is not a constitutionally protected category. Thus, the distinction in business size is immaterial to equal protection analysis. Even if business size was a constitutionally protected category, the Sheriff would still not have liability for the prosecution. The decision to prosecute lies solely with the prosecutor – not the sheriff. *See Superior Oil, Inc.*, 875 S.W.2d at 660. To the extent, therefore,

12

the Plaintiffs take issue with who was ultimately prosecuted and who was not, that issue is with the Defendant prosecutors. The Sheriff is entitled to qualified immunity on the Equal Protection claim.

Assuming, *arguendo*, the size of a business is a protected category for purposes of an Equal Protection claim, then it would be subject to the "rational basis" test. *See U.S. v. Green*, 654 F.3d 637, 651-52 (6th Cir. 2011) (where the court applied the rational basis test to an Equal Protection claim based on the plaintiff being prosecuted in a civil rather than military court). Under the rational basis test, courts will not overturn government action "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Id*. at 652 (*quoting Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000)). In the context of a prosecution, the Sixth Circuit has questioned whether arbitrariness is even a legitimate basis upon which to challenge a prosecutorial charging decision. *Id*. at 652. Assuming it is, however, the court suggests that it would require negating "every conceivable basis that might support the government's decision." *Id*.

In the case at bar, the Amended Complaint does not allege or demonstrate that the size of one's business is a constitutionally protected category. Nonetheless, if it is entitled to Equal Protection analysis, it would be under the low rational basis standard. The Complaint does not allege that the actions taken by the Sheriff were as a result of ill-will or malice, nor does it negate or allege to negate all conceivable reasons for the prosecutorial decision.[6] Therefore, the claim must be dismissed.

---

[6] In addition, because this is ultimately a prosecution decision, that issue lies with the prosecutors – not with the Sheriff who does not make these decisions.

13

### C. The Plaintiffs' Conspiracy Claim against Sheriff Fitzhugh Fails and must be Dismissed.

The Plaintiffs assert a conspiracy to violate the Plaintiffs' Fourth Amendment rights. *See* Amended Complaint at Count III (Doc. 5). This claims appears to be premised upon 42 U.S.C. §1985 and §1983. In order to succeed on establishing a §1985 conspiracy claim, the plaintiff must demonstrate (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or claim of persons of the equal protection of the laws, or of equal privileges or immunities of the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *See Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 831 (6th Cir. 2007). Such a complaint must "allege both a conspiracy and some class-based discriminatory animous behind the conspirator's actions." *Id*. (*quoting Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992). Moreover, a conspiracy claim must be pled with some degree of specificity and vague and conclusory allegations unsupported by material facts will not be sufficient to state a conspiracy claim. *Id*.

In order to prevail on a civil conspiracy and violation of §1983, the Plaintiffs must show that there is "an agreement between two or more persons to injure another by unlawful action." *See Sango v. Place*, 2016 WL 9413659 at *2 (6th Cir. 2016) (*quoting Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)). Specifically, the Plaintiffs must show that (1) a single plan existed, (2) the conspirator shared a conspiratorial objective to deprive the Plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Id*. In such a claim, the plaintiff cannot rely on "vague and conclusory allegations unsupported by material facts." *Id*. (*quoting Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

The Plaintiffs' civil conspiracy claims fail for three simple reasons. First, the allegations in the Amended Complaint do not rise above being "vague and conclusory" and, thus, fail the requirements to make such a claim. *See Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (where the court concluded the complaint did not meet the requisite of specificity needed to sustain a §1983 conspiracy claim). Second, the Amended Complaint cannot possibly be construed to assert that a single plan or conspiracy existed. On the contrary, the Amended Complaint actually details disagreements and concerns between the various actors about the Candy Crush operation. For example, the Amended Complaint alleges "this memo describes concerns that the Rutherford County Sheriff's Office had about the Candy Crush operation." *See* Amended Complaint at ¶40. The Amended Complaint also suggests disagreements between the TBI and the prosecution. *See e.g.* Amended Complaint at ¶46. The Amended Complaint alleges the TBI was not in agreement with certain statements made by the local prosecutors. *See id*. at ¶86. The Plaintiffs' own allegations make clear there was no single plan to violate any Plaintiffs' rights. Third, such a conspiracy requires that the Plaintiffs' constitutional rights were violated. As demonstrated in subsections A and B above, no such constitutional rights were violated. As a result, the Plaintiffs' conspiracy theories fail and must be dismissed.

### D. Plaintiffs' Claims against Rutherford County and Sheriff Fitzhugh in his Official Capacity Must be Dismissed.

The Plaintiffs have asserted claims against Rutherford County and Sheriff Fitzhugh in his official capacity. Based on the allegations in the Amended Complaint, these claims must likewise be dismissed.

It is well established that "official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (*quoting Monell v. New York Cty. Dept. of Soc. Svs.*, 436

U.S. 658, 690 (1978)).  As such, the official capacity claim against Sheriff Fitzhugh is essentially a claim against Rutherford County.  A governmental entity is only liable under §1983 when "the entity itself is 'a moving force' behind the deprivation" of a constitutional right.  *See Graham*, 473 U.S. at 166 (*quoting Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).  Therefore, in an official-capacity suit, the entity's "policy or custom" must have played a part in the violation of federal law.  *Id.*  To successfully plead an official-capacity claim against a municipal employee or entity, a plaintiff must (i) identify a municipal policy or custom; (ii) connect that policy or custom to the municipality; and (iii) show that execution of that policy or custom caused the particular injury.  *See Denton v. Bedinghaus*, 40 Fed. Appx. 974, 977 (6th Cir. 2002).  Municipalities incur §1983 liability only when the plaintiff's injuries are the result of a custom or policy of the municipality.  *Knott v. Sullivan*, 418 F.3d 561, 575 (6th Cir. 2005).

In the Amended Complaint, the Plaintiffs do not make allegations about unlawful customs or policies.  Instead, they allege various actions on the part of Sheriff's deputies or, in limited instances, Sheriff Fitzhugh.  *See generally* Amended Complaint (Doc. 5).  Allegations regarding actions of individual employees or officials, without more, is not adequate to state an official-capacity claim or a claim directly against the governmental entity under §1983.  *See Monell*, 436 U.S. at 689, 693; *Sullivan*, 418 F.3d at 575.  Local government cannot be held liable under §1983 on a theory of *respondeat superior*.  *Id.*

The Amended Complaint is devoid of allegations that Rutherford County or the Rutherford County Sheriff's Office had any policy or custom that played a part in the alleged violation of federal law.  There likewise is not and cannot be any allegation that any such policy (which is not even alleged to exist) could have been the moving force behind the alleged deprivation.  Allegations of a single incident of misconduct are not sufficient to infer a municipal

16

Case 3:18-cv-00965   Document 23   Filed 11/27/18   Page 16 of 19 PageID #: 186

wide policy. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005) (where the Sixth Circuit said that "[t]his argument, taken to its logical end, would result in the collapsing of the municipal liability standard and to a simple *respondeat superior* standard. This path to municipal liability has been forbidden by the Supreme Court."). Without even the identity of an alleged policy or custom that relates to and caused the injury, the Amended Complaint fails to state a claim against Sheriff Fitzhugh in his official capacity or against Rutherford County.

## V. CONCLUSION

For the foregoing reasons, the claims against Sheriff Fitzhugh and Rutherford County, Tennessee should be dismissed in their entirety with prejudice.

Respectfully submitted,

Hudson, Reed & McCreary, PLLC

By:/s/ Josh A. McCreary_____
    Josh A. McCreary
    Tenn. BPR#19498
    Nicholas C. Christiansen
    Tenn. BPR #30103
    16 Public Square North
    P.O. Box 884
    Murfreesboro, TN 37133
    (615) 893-5522
    jmccreary@mborolaw.com

CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a true and correct copy of the foregoing document was sent via the Court's electronic filing system to all counsel registered in this case on this 27th day of November, 2018:

Christopher W. Smith
David Randolph Smith
Dominick R. Smith
W. Lyon Chadwick, Jr.
David Randolph Smith & Associates
1913 21st Ave. South
Nashville, TN 37212

Frank R. Brazil
Wesley B. Clark
Brazil Clark, PLLC
2706 Larmon Avenue
Nashville, TN 37204

Robert M. Burns
Howell & Fisher, PLLC
Court Square Building
300 James Robertson Parkway #300
Nashville, TN 37201

Austin C. Evans
Howell & Fisher, PLLC
Court Square Building
300 James Robertson Parkway #300
Nashville, TN 37201

Nathan D. Cate
Jesse P. Lords
Law Offices of Lords and Cate
Washington Square Building
222 2nd Ave. N., Ste. 415
Nashville, TN 37201

Heather Cairns Ross
Tennessee Attorney General's Office
PO Box 20207
Nashville, TN 37202

John Zimmerman, Assistant District Atty.
District Attorney General
Murfreesboro Criminal Office
320 West Main St., Room 100
Murfreesboro, TN 37130

                                                /s/ Josh A. McCreary_____
                                                Josh A. McCreary

19

Case 3:18-cv-00965   Document 23   Filed 11/27/18   Page 19 of 19 PageID #: 189