IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JAMES SWAIN RIEVES, ET AL.    ) | |
|    ) | CASE NO. 3:18-CV-0965 |
| PLAINTIFFS,    ) | |
|    ) | Judge Aleta A. Trauger |
| V.    ) | |
|    ) | Jury Trial Demanded |
| TOWN OF SMYRNA, TENNESSEE,    ) | |
| ET. AL.    ) | |
|    ) | |
| DEFENDANTS.    ) | |

## SECOND AMENDED COMPLAINT

Pursuant to Fed. Rule Civ. P. 15(a)(2), Plaintiffs submit the following Second Amended Complaint.  A Motion to Amend is filed herewith.

## PARTIES

### Plaintiffs

1. Plaintiff JAMES SWAIN RIEVES is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as Platinum, LLC, d/b/a Cloud 9 Hemp in Smyrna, TN.

2. Plaintiff SAMY ANGLY is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as T&B Tobacco & Beer in Murfreesboro, TN.  He is of Egyptian descent.

3. Plaintiff AYOOB AYOOB is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as Kwik Sak in Smyrna, TN.  He is of Egyptian descent.

4. Plaintiff LOUIS SHAUN BERBERT is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as Enchanted Plant in Murfreesboro, TN.

1

5. Plaintiff AKRAM BISHARA is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated WAW Discount Tobacco & Beer in Murfreesboro, TN. He is of Egyptian descent.

6. Plaintiff ESKANDER ESKANDER is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as Vero Mero Market, in La Vergne, TN. He is of Egyptian descent.

7. Plaintiff GEORGE HANNA is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the businesses known as One Stop Shop in Smyrna, TN; Stop N Shop in Smyrna, TN; and Stop N Shop in Murfreesboro, TN. He is of Egyptian descent.

8. Plaintiff EHAB MALATY is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as Quick Stop Discount Tobacco in Murfreesboro, TN. He is of Egyptian descent.

9. Plaintiff ALAA MANKARIOUS is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as Tennessee Vape & Smoke in Smyrna, TN. He is of Egyptian descent.

10. Plaintiff NEVEN MANSOUR is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, she owned and operated the business known as Stop N Go in Murfreesboro, TN. She is of Egyptian descent.

11. Plaintiff MICHEAL MARCOUS is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as 99 Cents Discount Tobacco in Murfreesboro, TN. He is of Egyptian descent.

12. Plaintiff MENA MIKHAIL is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as A&M Tobacco & Beer in Murfreesboro, TN. He is of Egyptian descent.

13. Plaintiffs SCOTT RITTER and GINA RITTER are citizens and residents of Rutherford County, Tennessee. During all times relevant to the complaint, they owned and operated the business known as Vapesboro in Murfreesboro, TN.

14. Plaintiff FREDERICK SUBLETT is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as Magical Vapors in Murfreesboro, TN.

15. Plaintiff MARIAN TADROUS is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, she owned and operated the business known as Waldron Market (Discount Tobacco & Beer) in La Vergne, TN. She is of Egyptian descent.

16. Plaintiff MICHAEL ZAKARIA is a citizen and resident of Rutherford County, Tennessee. During all times relevant to the complaint, he owned and operated the business known as Last Stop Market in Lascassas, TN. He is of Egyptian descent.

**Defendants**

17. Defendant TOWN OF SMYRNA is a municipal city government entity operating pursuant to the laws of the State of Tennessee and may be served via the City Mayor's office at 315 S Lowry St, Smyrna, Tennessee 37167.

18. Defendant Police Chief KEVIN ARNOLD is the highest law enforcement officer for the Town of Smyrna. He may be served with process at the Town of Smyrna Police Department, 400 Enon Springs Rd East, Smyrna, TN 37167.

19. Defendant RUTHERFORD COUNTY is a political subdivision of the State of Tennessee, and may be served with process at the County Executive's office located One Public Square, Room 101, Murfreesboro, Tennessee 37130.

20. Defendant JENNINGS JONES is the elected District Attorney for Rutherford County, Tennessee. He may be served with process at the Rutherford County District Attorney's office, 320 W Main St #100, Murfreesboro, TN 37130.

21. Defendant JOHN ZIMMERMAN is the elected District Attorney for Rutherford County, Tennessee. He may be served with process at the Rutherford County District Attorney's office, 320 W Main St #100, Murfreesboro, TN 37130.

22. Defendant MIKE FITZHUGH is the Sheriff for Rutherford County. He may be served with process at the Rutherford County Sheriff's office, 940 New Salem Highway Murfreesboro, TN 37129.

## JURISDICTION

23. This action arises under the United States Constitution and under the laws of the United States of America, particularly under the provisions of the Fourth and Fourteenth Amendments of the United States Constitution, and particularly under the Civil Rights Act, codified at 42 U.S.C. § 1983 *et seq*.

24. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343.

25. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all the events giving rise to Plaintiffs' claims occurred in this District.

4

## FACTUAL ALLEGATIONS

### Facts Common to All Plaintiffs

26. Plaintiffs are owners of convenience stores, tobacco stores, and "vape shops" that sell a variety of tobacco products.

27. 12 of the 17 Plaintiffs in this matter are of Egyptian descent. These Plaintiffs collectively own 15 of the 19 stores at issue in this Complaint that were targeted as part of Operation Candy Crush.

28. Plaintiffs also sold industrial hemp derived products, including products containing cannabidiol (CBD), which is legal under Tennessee and federal law. Tenneessee Code Annotated § 39-17-402(16) ("'Marijuana' . . . does not include industrial hemp, as defined in § 43-26-102"); Tenn. Code Ann. § 43-26-102(4)(B) (Industrial hemp "includes any industrial hemp-derived products that do not contain more than three-tenths of one percent (0.3%) of delta-9 tetrahydrocannabinol (THC) in a topical or ingestible consumer product.") Tenn. Code Ann. § 43-26-103(C) ("Non-viable industrial hemp or any product made from non-viable industrial hemp procured through a grower or processor licensed by the department, or otherwise procured in accordance with the department's rules, shall not be considered marijuana under § 39-17-415.")

29. Beginning in or about February 2017, the Rutherford County Sheriff's Office began investigating the sale of CBD products in Rutherford County.

30. This investigation involved purchasing CBD products from Rutherford County stores and submitting the products for lab testing by the Tennessee Bureau of Investigation.

31. These products were purchased from the Vapesboro store, owned by Plaintiffs Scott and Gina Ritter. The Ritters had placed an ad on their business Facebook page for CBD products, fully (correctly) believing that their products were legal under Tennessee law.

5

32. Following the purchase of CBD products on February 3, 2017 from Vapesboro, Rutherford County detectives submitted these CBD products for testing to the TBI.

33. After this lab report was received, Rutherford County agents met with Defendant John Zimmerman to "seek prosecutorial direction on the case," according to Rutherford County's own internal investigation of the matter. ("Rutherford County Sheriff's Office, Office of Professional Responsibility, Summary of Investigation." **Exhibit 1**.) (previously filed as ECF 5-1.)

34. According to interview notes obtained from Rutherford County, Rutherford County Sheriff's Officers "took [lab report] to D.A.'s office for advice. [Referred] to John Zimmerman. Went into his office . . . J.Z. [requested] more purchases from same store and outside [Murfreesboro]." (Interview Notes, pg. 1, **Exhibit 2**, highlighting added by Plaintiff's attorneys.) (previously filed as ECF 5-2.)

35. These notes also record that a Rutherford County Sheriff's Officer "brought up to [Zimmerman] Amazon is selling [the same products.] He laughed and said we aren't going after Amazon. He said go to vape stores." (Exhibit 2, p. 3.)

36. Not only did Defendant John Zimmerman provide legal advice to the law enforcement officers working the case, but crucially, he directed the actions of the law enforcement officers.

37. The same Interview Notes specifically state: "sought legal advice from prosecution. Spoke to J. Zimm. [a number of] times for clarity. Couldn't get clarity from J. Zimm." The notes further state: "[District Attorney] Jennings [Jones] expressed definitely illegal." **Exhibit 2**, p. 2.

38. On December 17, 2017, Defendant John Zimmerman sent an e-mail with the subject "lab reports" to various TBI employees. That email read:

Lab # [Redacted] – by Hernandez (this was the first lab report that kicked off this investigation) and found exhibit to be schedule VI and containing a synthetic drug 5-Fluoro ABD.

After this seizure the stores switched to other items and began selling "Hemp Bomb gummy edibles" Police are seizing "Hemp Bond Gummies" from various stores. Same mfg and packaging.

Lab [Redacted] by Sullivan changed the description of the exhibit from what was on the request form to "sugar coated gummy bear" even though the exhibit description had the Hemp Bomb description

Lab [Redacted] by Hernandez changed the description of the exhibit from what was on the Request form, and found the test to be "Inconclusive." This in spite of the fact that Det. [Redacted] informed that it was the same packaging for all the above.

Lab [Redacted] by Carpenter properly described the "Hemp Bond gummy edibles" but shows "No analysis performed" though on the second exhibit she did a test and found it to be Cannabidiol, BUT did not list it as a schedule VI substance (the schedule column has a hyphen through it).

*Before we indict these owners of businesses, and padlock their businesses, we want to make sure we are understanding what is being offered for sale. Police say we have about 20 businesses and I want to make sure we are on the same page as the expert chemists.*

(**Exhibit 3**, emphasis added)(highlighting added by Plaintiffs' attorneys.) (previously filed as ECF 5-3.)

39. Based on the above email, as of December 17, 2017, Defendant Zimmerman knew that the

TBI lab reports were not conclusive as to the legality or illegality of the products sold by

Plaintiffs.

40. According to a March 26, 2018 memo, titled "Narcotics Investigation of CBD oils", by

Major William E. Sharp of the Rutherford County Sheriff's Office:

Early part of December 2017, I received a call from ADA John Zimmerman concerning investigation of synthetics, Gummy Bears and Marijuana Oils being sold in various stores throughout Rutherford County. Zimmerman asked me to "Get Detective [Redacted] more involved, a lot needed to be done." Zimmerman said: "they wanted to take this case to the February Grand Jury." Zimmerman explained we needed to move quickly and have this done before (*something about legislation*). (**Exhibit 4**, emphasis added). (previously filed as ECF 5-4.)

41. This memo describes concerns that the Rutherford County Sheriff's Office had about the Candy Crush operation. Despite these concerns, Rutherford County Sheriff's proceeded with the arrests of the Plaintiffs and the padlocking of their stores anyway. All charges against all Plaintiffs were later dropped.

42. On February 15, 2018, Defendant Zimmerman sent an e-mail, subject line "Bill just introduced," attaching a PDF file of proposed Senate Bill 2224. (**Exhibit 5.**) (previously filed as ECF 5-5.) The proposed bill, in key and relevant part, would have amended Tennessee's civil forfeiture laws to specifically exclude CBD products.

43. Senate Bill 2224 is the legislation to which Defendant Zimmerman was referring in the December 2017 meeting described in Major Sharp's memo. Senate Bill 2224 was first filed for introduction on January 31, 2018, approximately two weeks before Operation Candy Crush was executed and Plaintiffs were criminally charged. (*See TN.GOV*, last visited October 15, 2018:

   http://wapp.capitol.tn.gov/apps/BillInfo/default.aspx?BillNumber=SB2224&GA=110.)

44. Major Sharp's memo also describes the crucial role that civil forfeiture played in the Candy Crush operation. Major Sharp notes that on February 2, 2018, the following meeting and exchange occurred:

   > I met with DA Jones, ADA Zimmerman, and ADA Farmer at Jones' office
   > ...
   > We then discussed the issues about locking the doors and seizing property. Zimmerman's response was talking about the nuisance law. DA Jones brought up my concerns with civil action. Zimmerman said: "They will come in on their court date, plead guilty, pay the fines and get their businesses open." "We will put off the court dates, attorneys will get tired of coming to court and settle."

45. The February 2, 2018 meeting had been convened because of Major Sharp's concerns about the Candy Crush operation, as evidenced by the following e-mail, subject line

"Meeting to discuss edibles," dated January 24, 2018, from Defendant Jennings Jones to Major Sharp and Defendant Zimmerman:

> John and Bill:
>
> Bill has expressed a concern about what will happen if we indict, seize property and then the TBI refuses to testify that the substances used are illegal. Let's get together and discuss what is going on and how to address this possible issue.
>
> Are both of you available on Friday, February 2nd at 9am? If not, we can pick another date.
>
> (**Exhibit 6**.) (previously filed as ECF 5-6.)

46. This email, sent on January 24, 2018, pre-dates the arrests of Plaintiffs and the padlocking of their stores and the seizure of their products.

47. The same memo describes a February 23, 2018 phone call from Defendant Jennings Jones to Major Sharp. This call occurred when it became clear that the arrests of the Plaintiffs and the charges against them could not be supported. Major Sharp describes that phone conversation as follows:

> I received a call from DA Jones while at home. He asked if I heard or spoke with the Sheriff? Jones started the conversation with "Fucking T.B.I. refuses to testify in court over the results." Jones further stated "T.B.I. said in the meeting they were good with it." I asked DA Jones about civil action, Jones replied "AG said my office was (ok or fine)." I then asked about the Sheriff's Office and civil action, Jones stated he and the AG discussed it, mentioned the detective's good faith and said the AG thought we would be fine. General Jones said he would do a press release on Monday or Tuesday. "We will return the money, oils and property. I'll throw T.B.I. under the bus, they fucked us."
>
> (**Exhibit 4**, p. 2-3.)

48. The reference to a meeting with the TBI refers to a January 11, 2018 meeting between TBI employees, Defendants Zimmerman and Jones, and a Detective from the Rutherford County Sheriff's Office. (**Exhibit 1**, p. 3.)

9

49. As recounted in Rutherford County's Sheriff's Office internal investigative report (**Exhibit 1**):

> The meeting's purpose was for T.B.I. to clarify whether CBD was illegal or not.
>
> [The Rutherford County Sheriff's Office Detective] stated the conversation consisted of what he described as "lawyer talk" which was very unclear to him. A T.B.I employee expressed it was a scheduled substance, but he couldn't elaborate in this case whether it was illegal or not. The same employee advised he could not test for the percentage of THC. T.B.I. was very clear they did not have the equipment.
>
> [The Detective] stated his takeaway from the meeting was that T.B.I. couldn't test the percentage of THC and the chemist couldn't determine whether or not it was legal or illegal in the case. Towards the close of the meeting, [The Detective] spoke up to a T.B.I. attorney and asked if this stuff legal or illegal According to [The Detective], the response included I am going to give you the most lawyer answer you are going to hear and it's case specific. An A.D.A. allegedly turned and stated to [The Detective] that this stuff is illegal and we are going forward with this. [The Detective] stated he felt shut down by the ADA . . . [The Detective]'s recollection of the meeting with T.B.I. appears consistent with T.B.I.'s press release.

50. The internal investigative Report of the Rutherford County Sheriff's Office also describes the direct involvement of Defendant Rutherford County Sheriff Mike Fitzhugh in advancing the Candy Crush operation.

51. According to the report, Major Sharp "leaned towards postponing any advancement of the case." (**Exhibit 1**, p. 4.) The District Attorney's Office was "unsatisfied" with Sharp's decision and "reached out to the highest level of command at the Sheriff s Office. Two members from the District Attorney's Office met with the Sheriff and two Chiefs . . . Operation Candy Crush was executed on February 12, 2018."

52. The investigative report concluded with the following recommendation:

> I recommend consultation with the County Attorney in any future case where law enforcement is directed to perform actions inconsistent with their individual discretion or in which they have persistent concerns such as presented in Operation Candy Crush. (**Exhibit 1**, p. 7.)

53. On February 12, 2018, Operation Candy Crush was executed, and the leading law enforcement officers staged a televised press conference in front of the Vapesboro store, owned by Plaintiffs Scott and Gina Ritter.

54. Plaintiffs were arrested and charged with violating Tenn. Code Ann. § 39-17-417 (controlled substances.)

55. Defendants Jennings Jones, Mike Fitzhugh, and Kevin Arnold were present at the press conference.

56. In remarks at the press conference, Defendant Fitzhugh described the Candy Crush operation and stated that the Rutherford County Sheriff's Office and Smyrna Police Department had "conducted raids" on 23 stores for selling products "containing a marijuana derivative."

57. In fact, the CBD products sold at Plaintiffs' store were not derived from "marijuana" and did not meet Tennessee's statutory definition of "marijuana."

58. Defendant Fitzhugh further stated Detectives from the Rutherford County Sheriff's Office and Smyrna Police Department had "acted in an undercover capacity" to purchase products containing CBD "and other synthetic drugs in all 23 of these stores."

59. Defendant Fitzhugh also told reporters:

> What they do is they take these candies. They take them out of the package. They spray them with this illegal substance. And then they repackage them. Where you buy these in the store for a normal price, they repackage these and they go up $2.70 a package. This is an example of what they've done. They've taken gummy worms and infused them with the illegal substance. And then they repackage them in a different package.

60. These statements by Defendant Fitzhugh were completely false and defamatory, as there was absolutely no evidence that any Plaintiffs had tampered with product packaging or "infused" products with an "illegal substance."

61. Defendant Fitzhugh's reference to "other synthetic drugs" was false and defamatory.

62. Defendant Jennings Jones stated at the press conference, in reference to CBD products, "TBI has certified that this is a Schedule VI controlled substance."

63. This statement was false, as TBI agents had repeatedly expressed, including to Defendant Jones, that it could not determine legality.

64. Defendant Kevin Arnold also spoke at the press conference. At the conference, Defendant Arnold stated:

> I was at a meeting with TBI approximately four months ago, at which point this was brought up. I immediately texted my narcotics division and said "go to area stores and see if this is out there."

A reporter asked Defendant Arnold what CBD products are used for. He responded to "get high." The reporter responded that CBD products do not contain THC. Defendant Arnold responded: "then why are they buying it?" The reporter responded: "CBD can be used for a multitude of medical problems, like inflammation." Defendant Arnold responded: "So right now, in the State of Tennessee, is that legal?" The reporter answered: "it is . . . . you can get it at Wal-Mart."

65. Defendant Arnold also stated that the products were being sold to children, which was false.

66. Defendant Arnold defended the actions of the law enforcement agencies by stating: "every one of these stores, the Judge approved the lock down."

67. Defendant Arnold's statement that the "Judge approved the lock down" refers to the "Temporary Injunction and Order to Padlock Premises" orders signed by Judge Royce Taylor.

68. The Orders were granted by Judge Taylor based on a "Petition for Abatement of Nuisance" filed by Defendants Zimmerman and Jones. These Petitions were nearly identical in each Plaintiff's case.

69. The Petitions stated: "These edible products have been manufactured whereby such marijuana extracts are laced into and upon various edible products, typically candies that are generically sold in legitimate markets throughout Rutherford County. These drug-laced edible products are otherwise similar to candies sold for ingestion by children and adults alike and are packaged as gummy worms or gummy bears."

70. The above statement was completely false. The products did not contain "marijuana extracts." The CBD products, which were legal, were not sold to children.

71. In support of these Petitions, Defendants Zimmerman and Jones included an "Affidavit in Support of Petition For Abatement of Nuisance And Order to Search Premises." These Affidavits were sworn by Curtis Beane, a Rutherford County Sheriff's Detective.

72. These affidavits were also nearly identical, and contained the following inaccurate sentence:

> The "CBD" candy was sent to the Tennessee Bureau of Investigation's Crime laboratory (hereafter referred to as "TBI") for analysis which determined the candy had been laced with "CBD."

73. In fact, the TBI had never purported to make any claim regarding "lacing" products with CBD.

74. Further, in at least one case (Plaintiff Louis Shaun Berbert), the Affidavit stated: "TBI lab case number 171018416 indicated the gummies had "CBD." TBI concluded "CBD" is a schedule VI drug."

75. But in fact, the TBI had specifically removed scheduling from lab report 171018416. The TBI had entered a dash symbol under the "Schedule" column and included a note: "This

report has been amended to remove scheduling." (**Exhibit 7.**) (previously filed as ECF 5-7.) The amended report, dated 9/21/17, revised a prior report, dated 9/19/17, which included a Schedule VI notation.

76. Detective Beane did not mention in his sworn affidavit that the TBI had amended lab report 171018416 to specifically remove scheduling.

77. Defendants Zimmerman and Jones likewise did not mention in their filings to the Court that the determination of "Schedule VI" had been specifically removed by amendment.

78. Instead, Detective Beane and Defendants Zimmerman and Jones placed only the original report before the Court, making no mention that TBI had amended that report to remove scheduling.

79. In any event, Detective Beane and Defendants Zimmerman and Jones knew that the TBI had amended the report and were thus aware that the TBI was not standing by its determination that lab report 171018416 contained a Schedule VI drug.

80. On February 15, 2018, Plaintiff Frederick Sublett, through his attorney, Jim Todd, filed a Motion to Dismiss, arguing that the charges could not be supported because, even if the TBI had accurately identified "CBD" in its lab testing, "CBD" derived from industrial hemp is not illegal, pursuant to Tenn. Code Ann. § 43-26-103(c). Industrial hemp, in turn, means any parts of "the genera cannabis that do not contain a delta-9 tetrahydrocannabinol (THC) concentration more than three-tenths of one percent (0.3%) on a dry mass basis…"

81. Tenn. Code Ann. § 43-26-102(4) provides that "Industrial Hemp:" "Includes any industrial hemp-derived products that do not contain more than three-tenths of one percent (0.3%) of delta-9 tetrahydrocannabinol (THC) in a topical or ingestible consumer product.

82. Thus, the CBD products sold by Plaintiffs could be shown to be illegal only upon a showing that such products contained THC in excess of .3%.

83. The Defendants were unable to make such a showing.

84. All charges were dismissed and expunged.

85. The day after the Press Conference, Defendant Zimmerman spoke on the telephone with attorney Rod Kight, who represents the LLC that manufactured the "Hemp Bomb" candies at issue in Operation Candy Crush.

86. Mr. Kight attempted to explain to Defendant Zimmerman that the CBD products in question were legal under state and federal law.

87. Defendant Zimmerman told Mr. Kight that "all the people selling CBD in Rutherford County are 'foreigners.'"

88. Other businesses in Rutherford County that sold CBD were not prosecuted in the same manner as Plaintiffs.

89. In the case of Plaintiff George Hanna, who is of Egyptian descent, three of his stores were padlocked as nuisances.

90. Several gas stations in the immediate or nearby vicinities of Mr. Hanna's stores sold the same CBD products as Mr. Hanna. None of these nearby stores was padlocked; and the owners of these nearby stores were not arrested or charged with any crimes.

91. None of the nearby stores is owned or operated by a person of Egyptian descent.

92. In the aftermath of the Candy Crush operation, Defendant Jones released a press statement which cast blame on the TBI. (**Exhibit 8**.) (previously filed as ECF 5-8.) The first sentence of this statement reads:

> The District Attorney's office initiated actions to enforce the law in this case because the TBI assured us that the items being sold at various businesses in Rutherford County were infused with illegal controlled substances.

93. This statement is consistent with Defendant Jones' statement to Major Sharp: "I'll throw T.B.I. under the bus."

94. The TBI responded forcefully in a public statement:

> In this matter, it is inaccurate for the local stakeholders in these cases to assert they made decisions in this case unaware of the limits of our forensic work . . .

> We make no determination of the legality of situations involving the evidence we examine, and, in fact, our Forensic Scientists are rarely aware of the circumstances involving the evidence submitted for analysis . . .

> In this matter, we are not able to determine whether the CBD in these cases originated from industrial hemp, illicit marijuana, or synthetic production. In fact, such a determination is beyond the capability of contemporary drug identification . . .

> In the midst of this process, we clearly explained — in detail — the limitations of our analysis to all stakeholders. We did so to ensure they fully knew that, though we could identify CBD, we were not able to identify its origin.

> We also explained to them the nuance of the included schedule on our lab reports, which are provided as a courtesy. In this instance, we listed the schedule out of an abundance of caution because the sample could have met the standard for schedule as spelled out in the law. Local agencies and prosecutors — including those in Rutherford County — are well aware of that nuance.

> During the recent news conference on these cases, General Jones acknowledged himself that a substance being identified as a particular schedule does not make it inherently illegal. The circumstances of the possession or transfer — as determined by the local law enforcement agency and interpreted by the District Attorney General — make something "illegal."

> Again, to be clear: TBI lab reports objectively determine the compound present, but in no way are statements of compound origin, circumstances of possession, or guilt or innocence. Though we identified the substance and the relevant schedule, we made no determination about the legality of the substance or the circumstance in Rutherford County. That was a decision solely made — as in all cases — by the local agency and District Attorney General. (**Exhibit 9**.) (previously filed as ECF 5-9.)

**Facts Specific to Plaintiff Swain Rieves and Defendants Town of Smyrna and Kevin Arnold**

95. On or about May 1, 2017, Officers of the Town of Smyrna Police Department ("SPD") became aware that CLOUD 9 was selling products which contained CBD.

96. During their investigation, the SPD found an unambiguous, technical explanation of how COULD 9's products are legal derivatives of hemp.

97. Despite this unambiguous, technical explanation of CLOUD 9's products' legality, and despite the plain meaning of Tennessee statutes, the SPD continued its investigation for four months.

98. SPD officers learned that CBD products identical to those distributed by CLOUD 9 were available for purchase at local gas stations, markets, and even on Amazon.com.

99. The SPD has an entire division dedicated solely to drug enforcement.

100. The most common illegal drug is Marijuana.

101. The training provided by the Town of Smyrna failed to educate its police officers on the difference between legal industrial Hemp and illegal Marijuana.

102. The training provided by the Town of Smyrna failed to educate its police officers that industrial hemp and hemp derivatives may contain up to 0.03% THC (thus testing "positive" for THC) while violating no State or Federal laws.

103. On or about August 15, 2017, Smyrna Police Chief Kevin Arnold received correspondence from a Florida municipal police department indicating that CLOUD 9 was selling products that "tested positive" for THC.

104. Bolstered by the erroneous information provided by another ill-informed law enforcement agency, the Smyrna Police Department's Criminal Investigations Unit set about preparing for a raid on the premises of CLOUD 9.

105.    With direct supervision and approval by Chief Kevin Arnold, Detective Clete Elstran on September 26, 2017, obtained a search warrant for "marijuana and marijuana derivatives, extracts, and tinctures," based upon sworn statements that marijuana derivatives were being sold from COULD 9's Smyrna location.

106.    On September 26, 2017, multiple officers from the Town of Smyrna Police Department conducted a raid at 105 Jefferson Street, seizing approximately $60,000.00 worth of merchandise and equipment, and crippling Mr. Rieves' lawful business enterprise.

107.    Mr. Rieves explained to the police how his enterprise complied with state and federal law and how all his products were legal.

108.    No criminal charges were brought against him at this time, and Mr. Rieves believed that, once the SPD realized the mistake, everything would return to normal.

109.    Mr. Rieves, despite suffering serious harm to his business, purchased more inventory and resumed the sale of his industrial hemp derivatives because he had a family to feed and he knew that he was not breaking the law. No further police action was taken against Mr. Rieves for the remainder of 2017.

110.    Mr. Rieves was then again targeted by all Defendants in "Operation Candy Crush" as described above in Factual Allegations Common to All Plaintiffs.

**COUNT I: VIOLATION OF 4th AMENDMENT RIGHTS TO BE FREE FROM FALSE
ARREST, UNLAWFUL SEIZURE AND UNLAWFUL PROSECUTION
ALL DEFENDANTS
(42 U.S.C. 1983)**

111.    Plaintiffs incorporate by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

112.    As stated above, Defendants Jennings Jones and John Zimmermann undertook investigatory functions usually conducted by police. Acting under color of law, they

pushed law enforcement agencies to move OPERATION CANDY CRUSH forward, despite the serious and legitimate concerns raised by the investigating police officers.

113.    By the time Defendants conducted the February 2018 raid, they knew they were intentionally preying on local small businesses with the expectation that they would take a plea to get their businesses opened back up.

114.    Defendants knowingly participated in the illegal seizure, arrest, criminal prosecution and nuisance petition against Plaintiffs.

115.    Defendants were aware of the serious risk that they were arresting Plaintiffs for actions which Defendants knew were not illegal and Defendants consciously disregarded that risk.

116.    These actions violate Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## COUNT II: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT
### (42 U.S.C. 1983)

117.    Plaintiffs incorporate by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

118.    Defendants targeted Plaintiffs because they were small business owners, rather than large commercial operations such as Amazon or Wal-Mart.

119.    Defendants were aware that large commercial operations sold the same or similar CBD products as Plaintiffs yet did not pursue nuisance claims and criminal charges against these entities.

120.    The reason Defendants did not prosecute Amazon or Wal-Mart was that these large commercial entities were unlikely to be as easily intimidated into paying fines and agreeing to forfeit property to resolve these unsupportable claims and criminal charges.

19

121.     Defendants selectively enforced the law, as they misunderstood it, against Plaintiffs, because Plaintiffs were small business owners, with a perceived lack of resources to defeat the unsupportable claims and criminal charges.  (*See supra*, ¶ 43, "They will come in on their court date, plead guilty, pay the fines and get their businesses open." "We will put off the court dates, attorneys will get tired of coming to court and settle.")

122.     The Defendants based their enforcement decision, in part, on the arbitrary classification of Plaintiffs' commercial size and financial standing.

123.     These actions violate Plaintiffs' rights under the Fourteenth Amendment's equal protection clause.

**COUNT III: CONSPIRACY TO VIOLATE PLAINTIFFS' 4TH AMENDMENT RIGHTS TO BE FREE FROM FALSE ARREST, UNLAWFUL SEIZURE AND UNLAWFUL PROSECUTION**
**DEFENDANTS JONES, ZIMMERMANN, ARNOLD, AND FITZHUGH (INDIVIDUAL AND OFFICIAL CAPACITIES)**
**(42 U.S.C. § 1985 and § 1983)**

124.     Plaintiffs incorporate by reference all allegations contained in the paragraphs above as if restated fully herein verbatim.

125.     Defendants were motivated by financial gain through the abuse of civil forfeiture laws.

126.     In furtherance of this forbidden aim, Defendants targeted small businesses.

127.     Defendants were also motivated by discriminatory animus in the targeting of businesses known or believed to be owned by persons of Egyptian descent.

128.     Defendants were aware that the TBI would not testify that the scheduling they had provided "as a courtesy" established illegality of the tested items.

129.     Thus, Defendants knew that probable cause was wholly lacking.

130.     When District Attorney Jones and ADA Zimmermann set the meeting with the law enforcement chiefs and they agreed to continue Operation Candy Crush, they entered a

conspiracy to violate the civil rights of Plaintiffs engaged in the lawful sale of industrial hemp derivatives.

131.    When Defendant Fitzhugh agreed to allow Operation Candy Crush to proceed despite the clear objections of his subordinates, he committed an act in furtherance of the conspiracy.

132.    When the officers conducted the raids and seizures on February 12, 2018, acts in furtherance of the conspiracy materialized and violated the constitutional rights of Plaintiffs.

## DAMAGES

133.    As a result of the conduct of the Defendants, Plaintiffs have suffered:

   a.   Serious mental and emotional distress;

   b.   Loss of business income;

   c.   Loss of enjoyment of life;

   d.   Diminished reputation and standing in the community;

   e.   Out-of-pocket expenses associated with posting bail; defending criminal charges; and rebuilding their businesses.

WHEREFORE, Plaintiffs requests:

   f.   That a jury of 12 persons be empaneled to try this case;

   g.   A declaratory judgment that Defendants' conduct violated Plaintiffs' protected constitutional rights;

   h.   For nominal damages;

   i.   For compensatory damages in an amount to be determined at trial;

   j.   Reasonable attorney's fees and litigation expenses pursuant to 42 U.S.C. § 1988;

   k.   Such other and general relief as the court deems just.

Respectfully submitted,
DAVID RANDOLPH SMITH & ASSOCIATES

By: /s/ Christopher W. Smith
Christopher W. Smith, TN BPR #034450
David Randolph Smith, TN BPR #011905
Dominick R. Smith. TN BPR #028783
W. Lyon Chadwick. Jr. TN BPR #029599
1913 21st Avenue South
Nashville, Tennessee 37212
615-742-1775
csmith@drslawfirm.com
drs@drslawfirm.com
dom@drslawfirm.com
lyon@drslawfirm.com

Frank R. Brazil, #34586
Wesley Clark, #32611
BRAZIL CLARK, PLLC
2706 Larmon Avenue
Nashville, TN 37204
615-730-8619
615-514-9674 (fax)
frank@brazilclark.com
wesley@brazilclark.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was sent via the Court's electronic filing system to all counsel registered in this case on December 20, 2018.

Frank R. Brazil
Wesley B. Clark Brazil Clark, PLLC 2706
Larmon Avenue
Nashville, TN 37204

Nathan D. Cate
Jesse P. Lords
Law Offices of Lords and Cate Washington Square Building
222 2nd Ave. N., Ste. 415 Nashville, TN 37201
*Attorneys for Plaintiff Rieves*

Robert M. Burns

Austin C. Evans
Howell & Fisher, PLLC
Court Square Building
300 James Robertson Parkway #300 Nashville, TN 37201
*Attorney for Town of Smyrna and Kevin Arnold*

Heather Cairns Ross
Tennessee Attorney General's Office PO Box 20207
Nashville, TN 37202
*Attorney for Jennings Jones*

William T. Ramsey
Blind Akrawi
1201 Demonbreun Street, Suite 1000 Nashville, Tennessee 37203
(615) 244-1713 – Telephone
(615) 726-0573 – Facsimile
*Attorneys for John Zimmermann*

/s/ Christopher W. Smith