**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: May 16, 2023

Mr. Daniel Wesley Ames
Mr. Nick C. Christiansen
Mr. David Randall Mantooth
Hudson, Reed & Christiansen
16 Public Square, N.
Murfreesboro, TN 37130

Mr. Frank Ross Brazil
Mr. Wesley Ben Clark
Brazil Clark, 2901 Dobbs Avenue
Nashville, TN 37211

Mr. Austin C. Evans
Howell & Fisher
3310 W. End Avenue, Suite 550
Nashville, TN 37203

Mr. Jeffrey L. Peach
315 S. Lowry Street
Smyrna, TN 37167

Re: Case No. 23-5106, *James Rieves v. Town of Smyrna, TN, et al*
Originating Case No. : 3:18-cv-00965

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                              Yours very truly,

                              Deborah S. Hunt, Clerk

                              Cathryn Lovely
                              Deputy Clerk

cc: Ms. Lynda M. Hill

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0100p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JAMES SWAIN RIEVES,

        *Plaintiff-Appellant*,

   *v*.

TOWN OF SMYRNA, TENNESSEE, et al.,

        *Defendants*,

RUTHERFORD COUNTY, TENNESSEE; MIKE FITZHUGH, in his official and individual capacities,

        *Defendants-Appellees*.

No. 23-5106

---

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:18-cv-00965—Aleta Arthur Trauger, District Judge.

Decided and Filed:  May 16, 2023

Before:  GIBBONS, KETHLEDGE, and BUSH, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:**  Wesley Ben Clark, Frank Ross Brazil, BRAZIL CLARK PLLC, Nashville, Tennessee, for Appellant.  Nick C. Christiansen, Daniel W. Ames, D. Randall Mantooth, Murfreesboro, Tennessee, for Appellees.

---

**OPINION**

---

    JULIA SMITH GIBBONS, Circuit Judge.  Local law enforcement officials in Rutherford County, Tennessee raided twenty-three stores selling cannabidiol ("CBD") products because

No. 23-5106  *Rieves v. Town of Smyrna, Tenn.*  Page 2

they falsely believed that such products were illegal under state drug laws. The charges were dropped, as the products were legal under both state and federal law. The shop owners then sued the responsible law enforcement agencies, asserting violations of their constitutional rights and conspiracy to violate those rights. All but one of the shop owners ultimately settled. The sole remaining plaintiff, James Rieves, sought to progress to trial on his claims against the City of Smyrna and its police chief as well as Rutherford County and its sheriff. However, the district court granted summary judgment to the County and sheriff and certified the decision for interlocutory appeal.

We granted interlocutory appeal to clarify the scope of our civil conspiracy doctrine. Because the plaintiff presented evidence to support a claim of § 1983 civil conspiracy, we reverse the district court's judgment and remand for further proceedings.

I.

This case concerns "Operation Candy Crush," a joint operation by the Rutherford County District Attorney's ("DA's") office, the Rutherford County Sheriff's Office ("RCSO"), and the Smyrna Police Department ("SPD").[1] It began in February 2017, when an RCSO officer opened an investigation into cannabidiol ("CBD") products being advertised on Facebook by a local store. An undercover officer purchased a selection of CBD products from the store and submitted the products to the Tennessee Bureau of Investigation ("TBI") for lab testing. The resulting TBI laboratory report noted that the products contained CBD and categorized CBD as a Schedule VI drug. Several RCSO detectives met with Assistant DA John Zimmerman to "seek prosecutorial direction" because the detectives could not find a legal source to indicate that CBD was in fact a Schedule VI drug. DE 122-3, RCSO Summary, Page ID 1284. Over the coming months, RCSO detectives were repeatedly assured by members of the DA's office that CBD was illegal.

Independently of the RCSO investigation, SPD learned of shops selling CBD products and began investigating. One of these shops was Platinum Vapor, LLC, d/b/a Cloud 9 Hemp

---

[1]Because this appeal is taken from the district court's order granting the defendants' motion for summary judgment, we draw all facts and inferences in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 600-01 (1986) (White, J., dissenting).

("Cloud 9"), which SPD Sergeant Eric Elstran began investigating in August 2017. On September 15, 2017, SPD became aware that RCSO was conducting its own investigation into CBD products in the area and Elstran contacted RCSO for more information. RCSO also asked SPD if it would assist in future raids of businesses being investigated. On September 26, 2017, Elstran executed a search warrant at Cloud 9 and seized products labelled as CBD. In response, James Swain Rieves, the owner of Cloud 9, emailed Elstran and detailed exactly how all of the store's CBD products were legal. No criminal charges were brought against Rieves at that time.

In the following months, Operation Candy Crush continued to move forward, despite concerns from RCSO officials that the CBD products might be legal. On January 11, 2018, two assistant DAs, RCSO Detective Curtis Beane, Elstran, and members of TBI met at the TBI headquarters in Nashville. At the meeting, TBI agents informed the other agencies that their tests could not conclude whether the products contained illegal substances and that "under no circumstances" would TBI agree to testify that the CBD products were illegal or qualified as Schedule VI drugs. DE 122-14, TBI Report, Page ID 1393. Members of the RCSO, particularly Major Bill Sharp, continued to express reservations about moving forward with the operation. Sharp briefed RCSO Sheriff Mike Fitzhugh about the case on January 22, 2018, and met with five other RCSO members on January 30, 2018, where consensus was that "no one [was] comfortable moving ahead at [that] time." DE 122-13, Sharp Report, Page ID 1389. Sharp explicitly shared those concerns with Fitzhugh. Sharp further attempted to stop the search warrants associated with Operation Candy Crush.

Rather than pausing and fully addressing these concerns, members of the DA's office escalated the case directly to Fitzhugh, the head of RCSO. According to one RCSO officer, "Sheriff Fitzhugh ignored [the officers'] concerns and decided to move forward anyway." DE 142-2, Mathis Decl., Page ID 1815. Fitzhugh then directed Sharp and other detectives to attend another meeting with the DA's office. That meeting, on February 2, 2018, was "contentious" as the RCSO detectives continued to express concerns. In the meeting, Sharp raised concerns about "civil action" by the store owners, to which Zimmerman responded: "We will put off the court dates, attorneys will get tired of coming to court and settle." DE 122-13, Sharp Report, Page ID 1389.

Once again, despite the concerns raised, the operation moved forward and a simultaneous raid of twenty-three stores selling CBD products in Rutherford County was set for February 12, 2018. Although it had previously been searched by SPD, Cloud 9 was included on the list of stores to be raided. RCSO hosted a meeting about procedures for the raids, protocols for collection of evidence, and assignment of teams. RCSO was assigned to twenty-one locations. SPD was assigned to Cloud 9 and one other location.

On February 12 at 11:50 a.m., the operation took place as planned. Law enforcement officials from RCSO, SPD, and other agencies simultaneously executed raids on twenty-three stores selling CBD products in Rutherford County, including Cloud 9. The stores were padlocked, their inventory was seized, and the owners were arrested and charged with violating the Tennessee Drug Control Act and creating a public nuisance.

That same day, the DA's office organized a press conference led by Fitzhugh. Fitzhugh explained Operation Candy Crush to reporters and stated that the seized products contained an illegal marijuana derivative that was dangerous to children. Fitzhugh then stated that the products were created by taking real candy products, spraying them with "this illegal substance" and then repackaging them. DE 122-20, Press Conference Tr., Page ID 1445. He finally claimed that "some of the synthetic products" had caused two deaths in the United States. *Id.* at Page ID 1447. RCSO issued a press release about the raids and created a Facebook post celebrating the operation. Local newspapers reported the story, which named the raided stores and their owners, including Rieves.

All charges were eventually dismissed because the CBD products were legal under both federal and state law. When the DA's office realized that the cases against the store owners were falling apart, DA Jennings Jones called Sharp at home to inform him. Sharp once again raised concerns about civil action by the store owners and Jones assured him that RCSO would be fine because they could rely on "good faith" and "throw T.B.I. under the bus." *See* DE 122-13, Sharp Report, Page ID 1389-90.

Seventeen store owners sued the various agencies and law enforcement officials involved in the operation under 42 U.S.C. §§ 1983 and 1985 for violating their constitutional rights to be

No. 23-5106                *Rieves v. Town of Smyrna, Tenn.*                Page 5

free from false arrest, unlawful seizure, and unlawful prosecution, as well as their right to equal protection. They also claimed that officials leading the agencies—SPD Police Chief Arnold, Jones, Zimmerman, and Fitzhugh—engaged in a conspiracy to deprive the owners of their constitutional rights.

In March 2019, the district court denied motions to dismiss filed by Jones, Zimmerman, Fitzhugh, and Rutherford County. Those defendants appealed and this panel affirmed in all respects except for the equal protection claim against Fitzhugh, on which we determined he was entitled to qualified immunity. *Rieves v. Town of Smyrna* ("*Rieves I*"), 959 F.3d 678, 700 (6th Cir. 2020).

After the case was remanded, sixteen of the seventeen plaintiffs reached agreement with all defendants on all claims and jointly moved for partial dismissal with prejudice, which the district court granted. The only remaining plaintiff, Rieves, reached agreements with Jones and Zimmerman, leading to their dismissal from the case. After these settlements, only Rieves's § 1983 claims against the "Smyrna Defendants" (the Town of Smyrna and Arnold) and the "County Defendants" (Rutherford County and Fitzhugh) remain. While the claims against the Smyrna defendants were set for trial, the County defendants moved for summary judgment on all claims. They further asserted that Rieves lacked standing in his claims against them.

The district court granted summary judgment to the County defendants. While the district court determined that Rieves did have standing to bring his claims, it held that Fitzhugh and the County could not be at fault for the violations of Rieves's Fourth Amendment rights, as the search, seizure, and arrest were all conducted solely by members of SPD. It also held that the conspiracy claims could not stand against Fitzhugh because of language from our opinion in *Webb v. United States*, 789 F.3d 647 (6th Cir. 2015). That latter holding is the subject of the instant interlocutory appeal by Rieves, which we granted to clarify the scope of our civil conspiracy doctrine.

II.

We begin by briefly addressing the standing argument raised by the County defendants both before the district court and on appeal. "To have standing, a plaintiff must allege (1) an

injury in fact (2) that's traceable to the defendant's conduct and (3) that the courts can redress." *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992)). There is no dispute that Rieves alleges a redressable injury by asserting claims that his constitutional rights were violated by Operation Candy Crush; rather, the County defendants challenge whether his injury is traceable to them.

Traceability requires that the defendant's actions "have a 'causal connection' to the plaintiff's injury." *Id.* (quoting *Lujan*, 504 U.S. at 560). However, the plaintiff need not prove that the defendant was the sole cause of his injury as long as harm is a "predictable effect" of the defendant's actions on the decisions of third parties. *Dep't of Com. v. New York*, -- U.S. --, 139 S. Ct. 2551, 2566 (2019).

Here, Rieves alleges that RCSO contributed to the furtherance of Operation Candy Crush and the accompanying violation of his constitutional rights. He asserts that RCSO and Fitzhugh asked the Town of Smyrna to assist in future raids, ignored repeated concerns about the legality of the CBD products at issue, and assigned roles for the operation. The RCSO's role assisted the Smyrna defendants in executing their role in the operation and the resultant injury to Rieves was a predictable outcome of their aid. The defendants dispute their role in targeting Cloud 9, which is relevant to the merits question whether Rieves has established causation under the applicable legal standard; however, "Article III 'requires no more than *de facto* causality[.]'" *Dep't of Com.*, 139 S. Ct. at 2566 (quoting *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.)). Because Rieves has alleged such causality, the traceability requirement is satisfied.

III.

With standing established, we analyze whether the district court properly granted summary judgment to the County defendants on Rieves' 42 U.S.C. § 1983 civil conspiracy claim. Summary judgment determinations are reviewed de novo. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002). The County defendants are entitled to summary judgment if they show that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As Rieves adopts the same set of facts relied upon by the district court, the question is whether these facts make out a claim of civil conspiracy.

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). To prove conspiracy, plaintiffs must show (1) "that there was a single plan," (2) "that the alleged coconspirator shared in the general conspiratorial objective," and (3) "that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id.* at 944 (citations omitted).

Plaintiffs need not prove an express agreement among the conspirators, nor must they show that each conspirator knew "all of the details of the illegal plan or all of the participants involved." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (quoting *Hooks*, 771 F.2d at 944). In order to survive summary judgment, plaintiffs asserting a civil conspiracy can "rely on circumstantial evidence to establish an agreement among the conspirators," *id.* (citing *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012)), as long as the conspiracy claims are "pled with some degree of specificity" and do not rely on "vague and conclusory allegations," *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, the alleged conspiracy is Operation Candy Crush, a single plan to simultaneously raid and padlock twenty-three CBD-selling businesses where law enforcement officials in charge knew that the products were legal and that no probable cause existed for the raids. Fitzhugh was an alleged co-conspirator, as he shared in the objectives of the operation. His shared interest in the objectives of the operation was evidenced by allowing the raids to go forward after learning of the questionable legality of the raids and his officers' expressed discomfort with the operation, as well as the critical role RCSO played in the execution of the operation and at the subsequent press conference. Finally, the alleged "overt act" was the execution of the raids and prosecution of the store owners.

Despite these allegations, the district court concluded that the "broad conspiracy" of Operation Candy Crush was insufficiently personal to Rieves to make out a conspiracy claim. DE 162, Op. and Order, Page ID 2044. That is, the district court found Fitzhugh's general awareness of the operation inadequate because he was not "personally involved" in the investigation of Cloud 9, the determination that Cloud 9 was selling illegal products, the indictment of Rieves, or the physical raid and padlocking of Cloud 9. *Id.* at Page ID 2045. For that reason, the district court granted summary judgment to the County defendants.

Section 1983 civil conspiracy claims do not contain a "personal involvement" requirement. Such a standard would defeat the purpose of permitting a civil conspiracy claim because, at its core, "section 1983 permits a jury to hold co-conspirators liable for the damages flowing from a constitutional deprivation that all of the co-conspirators may not have personally carried out." *Sánchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020); *see also Webb*, 789 F.3d at 671 ("[T]he overt-act element requires only that at least one of the alleged conspirators committed an overt act or omission in furtherance of the conspiracy."); *Simpson v. Weeks*, 570 F.2d 240, 243 (8th Cir. 1978) ("The charge of conspiracy in a [§ 1983] civil action is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible for any overt act or acts.") (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956)). Liability for § 1983 conspiracy can attach even where "parties decide to act 'interdependently,' each actor deciding to act only because he was aware that the others would act similarly[.]" *Aubin v. Fudala*, 782 F.2d 280, 286 (1st Cir. 1983).

Here, Fitzhugh's alleged behavior reflects interdependent decision-making with SPD and the DA's office through the planning and execution of Operation Candy Crush, all calculated to achieve an unconstitutional outcome. Although SPD's raid of Cloud 9 was the overt act that directly caused Rieves's alleged injury, holding the County defendants liable for their alleged involvement in the overall plan that led to that raid is not only proper but exactly the kind of conspiratorial behavior at the heart of § 1983 civil conspiracy claims.

The district court's conclusion to the contrary was based on language from our decision in *Webb*. The case was one of several before our court that addressed the fallout of Operation Turnaround, a joint operation of the Drug Enforcement Agency and local law enforcement addressing the illegal drug trade in Mansfield, Ohio, in the fall of 2005. 789 F.3d at 652; *see also Robertson*, 753 F.3d at 610; *Brown v. United States*, 545 F. App'x 435 (6th Cir. 2013); *Mott v. Mayer*, 524 F. App'x 179 (6th Cir. 2013). Within that facially legitimate operation, local officials recruited a confidential informant who then used fake drug buys to frame innocent people. *Webb*, 789 F.3d at 652-53. The involved officers apparently had varying levels of knowledge about what the informant was doing, ranging from looking the other way when he

shorted the government money to helping him frame people by fabricating evidence. *Robertson*, 753 F.3d at 612.

Against that backdrop, a panel of this court decided *Webb*, where two of the framed individuals sued some of the Operation Turnaround law enforcement officials and brought § 1983 civil conspiracy claims. 789 F.3d at 670-71. *Webb* concluded that a jury *could* infer a conspiratorial plan for each of the plaintiffs. *Id.* at 671. For one plaintiff, the conspiracy was among officers Lee Lucas, Chuck Metcalf, and Robert Cross, while for the other plaintiff, the conspiracy was among Lucas, Metcalf, and Larry Faith. *Id.* The opinion then explained that the plaintiffs' § 1983 conspiracy claims against the remaining defendants failed,

> because those claims rely exclusively on misconduct in the wider Operation Turnaround context. Webb and Price were required to show that the remaining individual Defendants shared a common plan to violate *their* constitutional rights. While the remaining individual Defendants may have been involved in framing other Operation Turnaround targets, Plaintiffs produced no evidence that any of them personally participated in framing Webb or Price, and therefore it cannot be inferred that these Defendants joined in a common plan to frame Webb or Price.

*Id.* (citations omitted) (emphasis in original). It was from this language that the district court inferred a "personal involvement" requirement.

As we read it, *Webb* does not demand personal involvement by each co-conspirator in every wrongful or overt act to be held liable. Instead, taken in the context of the broader series of cases, *Webb* reflects an emphasis on § 1983 civil conspiracy's requirement of a shared plan, because Operation Turnaround did not reveal itself to be one conspiracy. The operation, which constituted a series of drug buys committed over several months, orchestrated and carried out by varying groups of officers, required an analysis that treated each of the corrupt drug buys as its own conspiracy. Webb and Price alleged corrupt drug buys executed by different configurations of two or three officers, *id.*, while other framed plaintiffs could not allege *any* conspiracy, *see Robertson*, 753 F.3d at 622. Notably, this makes sense because it was unclear for some of the drug buys whether *any* officer knew that the confidential informant was framing the innocent subject of the buy. *See Robertson*, 753 F.3d at 611-12. Within that context, the *Webb* panel held that officers involved in other drug buys or other, unrelated misconduct could not be held

responsible as co-conspirators in the conspiracies against each of the other framed plaintiffs. 789 F.3d at 671.

Unlike Operation Candy Crush, then, Operation Turnaround was not itself an illegal conspiracy. Rather, varying groups of officers *within* Operation Turnaround conspired separately to frame Webb, Price, and others. Thus, *Webb* held, an officer's participation in the overarching (legitimate) operation was insufficient to show that the officer had shared the conspiratorial objective to frame plaintiffs. 789 F.3d at 670-71. That holding did no more than restate the familiar requirement that an alleged coconspirator must have "shared in the general conspiratorial objective." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks*, 771 F.2d at 943-44).

Here, several factors indicate that a jury could reasonably conclude that Operation Candy Crush constituted a "single plan" in which Fitzhugh participated.

First, Operation Candy Crush had an obviously illegitimate purpose, known by the conspirators, prior to the overt act. The evidence supports Rieves's contention that Sharp shared his concerns with others in the RCSO about the legality of the operation, but that the DA's office went over his head and contacted Fitzhugh in order to get RCSO to proceed with the operation. A jury could reasonably conclude that Fitzhugh knew that the CBD products were legal but encouraged his officers to go forward with the operation anyway. Unlike Operation Turnaround, which had a facially legitimate purpose, Operation Candy Crush was illegitimate from the outset and leadership knew that the raids lacked probable cause prior to their execution.

Next, the scope of the operation was known and defined before the raids. The twenty-three stores (including Rieves's) were listed in an email circulated among the law enforcement agencies in the week prior to the raids as they divided up responsibility for executing those raids. Unlike Operation Turnaround, which involved a series of one-off operations, each involving different levels of knowledge by law enforcement and involving different individual officers, all the stores in Operation Candy Crush were known and targeted well in advance, and that information was circulated to all law enforcement agencies involved. Furthermore, Fitzhugh

described the raids as a single investigation in his subsequent press conference, Facebook post, and press release.

Third, the simultaneous nature of the raids indicates that they should be treated as parts of a single plan. Although different agencies took responsibility for different locations, Fitzhugh himself explained that the agencies coordinated to execute those raids at the exact same time. Unlike the individualized drug buys of Operation Turnaround that occurred over a series of months, Operation Candy Crush is reasonably treated as a single plan to violate the shop owners' constitutional rights because the raids were coordinated and carried out simultaneously, with the knowledge of all parties.

The timing, illicit purpose, and defined scope of Operation Candy Crush create a genuine dispute about whether it functioned as a single conspiratorial plan to raid the stores and arrest the owners without probable cause. These factors differentiate Operation Candy Crush from Operation Turnaround, the subject of *Webb* and the heart of the district court's reasoning for granting summary judgment to the County defendants. The evidence presented by Rieves in his opposition to summary judgment indicates that Fitzhugh acted as a conspirator in Operation Candy Crush and that his co-conspirators took overt acts that injured Rieves by unconstitutionally raiding Cloud 9.

For those reasons, the County defendants were not entitled to summary judgment and the judgment of the district court is reversed.

IV.

The County makes two additional arguments: first, even if Fitzhugh engaged in a civil conspiracy, the County is not liable, and second, Fitzhugh is entitled to qualified immunity. The district court reached neither of these arguments.

To begin, the County is generally liable for the acts and decisions made by Fitzhugh in his capacity as the final decisionmaker for RCSO. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *Flagg v. City of Detroit*, 715 F.3d 165, 174-75 (6th Cir. 2013); Tenn. Code. Ann. § 38-3-102(b) (endowing sheriffs, in their respective counties, with the duty to "ferret out

crimes, to secure evidence of crimes, and to apprehend and arrest criminals"). The County does not contest that Fitzhugh is the final decisionmaker of RCSO. Instead, it reiterates its argument that Fitzhugh was not adequately involved in the raid of Cloud 9 to confer liability. It further asserts that there are special limitations for conspiracy claims which require the plaintiff in such a case to connect the conspiracy to a policy or custom of the county.

Neither of these arguments against *Monell* liability is valid. As discussed above, Fitzhugh's alleged involvement in Operation Candy Crush sufficiently supports a claim of civil conspiracy. And no case law exists to suggest that the standard for *Monell* liability in the conspiracy context differs from the general standard pursuant to which the act of a final decisionmaker is enough to constitute a municipal policy.

Similarly meritless is the County defendants' argument that Fitzhugh is entitled to qualified immunity. Qualified immunity protects governments officials from personal civil liability as long as their conduct does not violate an individual's clearly established rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). At the motion to dismiss stage, we held that Fitzhugh was not entitled to qualified immunity with respect to the store owners' Fourth Amendment claims because he "knew or reasonably should have known that the plaintiffs' arrests were being effected without probable cause." *Rieves I*, 959 F.3d at 698 (quoting DE 59, Mem. Order, Page ID 442). We clarified that "[a]lthough Fitzhugh's role in the investigation was less direct than that of Jones and Zimmerman, the complaint alleges that he knew the RCSO officers' legitimate concerns about the CBD products' supposed illegality and nevertheless assisted in the execution of Operation Candy Crush." *Id.* at 699. In the instant appeal, the only material change has been the introduction of documents into the record that support these allegations.

Because the record evidence creates a genuine dispute about whether Fitzhugh either 1) knew that probable cause did not support Operation Candy Crush; or 2) held an objectively unreasonable belief that probable cause existed for all of the store owners, which he had reason to know included Rieves, and overrode his officers' concerns about the legality of the CBD products to move forward with the operation, he is not entitled to qualified immunity on the claim that he conspired to deprive Rieves of his constitutional rights.

V.

For the foregoing reasons, the judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-5106

JAMES SWAIN RIEVES,

    Plaintiff - Appellant,

v.

TOWN OF SMYRNA, TENNESSEE, et al.,

    Defendants,

RUTHERFORD COUNTY, TENNESSEE; MIKE FITZHUGH, in his official and individual capacities,

    Defendants - Appellees.

```
             FILED
          May 16, 2023
       DEBORAH S. HUNT, Clerk
```

Before: GIBBONS, KETHLEDGE, and BUSH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED and REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk