IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES SWAIN RIEVES et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-00965 |
| ) | Judge Aleta A. Trauger |
| TOWN OF SMYRNA, TENNESSEE ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM and ORDER**

Before the court is plaintiff James Swain Rieves' Motion in Limine #4 – To Exclude Expert Testimony of Defendants' Retained Expert Robert Vance (Doc. No. 189), filed along with a Memorandum of Law (Doc. No. 190) and a number of exhibits. The defendant seeks to have Vance testify as a financial expert regarding the calculation of the plaintiff's damages. The plaintiff argues that Vance's opinions do not meet the standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The defendants oppose the motion. (Doc. No. 240.) For the reasons set forth herein, the motion will be granted in part.

I.  **STANDARD OF REVIEW**

On a motion to exclude, the party offering an expert's opinion bears the burden of establishing the admissibility of that opinion by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). Expert testimony is admissible only if it satisfies the requirements of Federal Rule of Evidence 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." "Parsing the language of the Rule," the Sixth Circuit has concluded that "a proposed expert's opinion is admissible, at the discretion of the trial court," if (1) "the witness [is] be qualified by 'knowledge, skill, experience, training, or education'"; (2) the testimony is "relevant"; and (3) the testimony is "reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008) (quoting Fed. R. Evid. 702). "The same set of questions applies to expert testimony and science-based test results." *United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021) (citation omitted). Under Rule 702, the trial judge acts as a gatekeeper to ensure that expert evidence is both reliable and relevant. *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007).

The court plays this same gatekeeping function even if the expert's opinion is "technical," rather than scientific, in nature. *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 509 (6th Cir. 2014) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)). Generally, in determining whether scientific evidence is reliable, the court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Supreme Court has identified a non-exhaustive list of factors that may help courts in assessing the reliability of a proposed expert's opinion, but the *Daubert* factors "are not dispositive in every case and should be applied only where they are reasonable measures of reliability of expert testimony." *Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (internal quotation marks and citation omitted). At the same time, "rejection of expert testimony is the exception, rather than the rule." *Scrap Metal Antitrust Litig.*, 527 F.3d at 530. "Vigorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Federal Rule of Evidence 703 governs the bases of experts' opinion testimony as follows:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. Rule 703 identifies three types of evidence upon which an expert's opinion may be based: (1) "firsthand observation of the witness"; (2) evidence presented at the trial; and (3) "data [presented] to the expert outside of court and other than by his own perception." Fed. R. Evid. 703 advisory committee's note to 1972 proposed rules.

Although an expert's opinion is not admissible if it is speculative or mere guess work, the court should admit expert testimony if it has a reasonable factual basis. *See United States v. Ramer*, 883 F.3d 659, 680 (6th Cir. 2018) (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)). In such a circumstance, "any remaining challenges merely go to the weight, as opposed to the admissibility, of the expert testimony." *Id.* (citing *Scrap Metal Antitrust Litig.*, 527 F.3d at 530). Federal Rule 703 allows an expert witness to testify to an opinion that is supported by inadmissible hearsay evidence. *United States v. Scott*, 716 F. App'x 477, 485 (6th Cir. 2017) (unpublished).

In assessing the admissibility of an expert's opinion, it is often difficult to determine whether "the analysis of a specific application is a question of weight for the jury or a question of admissibility for the judge." Shelley Storer, *Note, The Weight Versus Admissibility Dilemma: Daubert's Applicability to A Method or Procedure in A Particular Case*, 1998 U. ILL. L. REV. 231, 233 (1998). As one district court has explained:

> Admissibility, the more difficult inquiry, hinges on an amalgam of experts' qualifications, the topic of discussion, the basis of the experts' knowledge on that topic, and the reliability of the methodology that the experts applied in reaching their opinions. But if the court finds that it is more likely than not that the experts have reliably applied the underlying methodology to the facts of the case, then any argument contesting the substance of the experts' opinion is a matter for the jury to decide: the evidence's "weight," in a word.

*Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 547, 563 (E.D. Mich. 2022)

## II. BACKGROUND

The plaintiff has employed Tom Price, a CPA and an expert in the field of damages and business valuation, to calculate his damages and lost profits incurred by his business following the events at issue in this lawsuit. The defendants do not challenge the admissibility of Price's opinions, which are outlined in a written report ("Price Report") (Doc. No. 190-1). However, they have employed CPA Robert Vance, a proposed expert in Forensic and Valuation Services, to challenge the bases for Price's conclusions and to proffer his own opinion regarding the valuation of the plaintiff's damages. The plaintiff does not challenge Vance's qualifications as an expert or the relevance of his opinion. Rather, he challenges the reliability of Vance's opinions, as set forth in Vance's own written report ("Vance Report") (Doc. No. 190-2).

## III. THE VANCE REPORT

The Vance Report is comprised of two main sections, the first of which engaged in a critique of the opinions set forth in the Price Report and the second of which contains Vance's own "Damage Calculation." The plaintiff highlights three opinions proffered by Vance in his critique of the Price Report that the plaintiff seeks to exclude as unreliable: (1) Vance's opinion that Price's calculations are unreliable, because Price uses "national level statistics" and applies them to the plaintiff's "small, local CBD store and his online business" (*see* Doc. No. 190-2, at 3; Doc. No. 190, at 2); (2) Vance's opinion that the Price Report "fails to consider lack of capital and credit in [the] damages analysis" (Doc. No. 190-2, at 5; Doc. No. 190, at 2); and (3) Vance's opinion that

4

the Price Report "failed to consider the competition" posed by retail establishments in Smyrna selling CBD product when computing damages and failed to take into consideration the potential competition posed by entry of "big box" stores into the CBD market (Doc. No. 190-2, at 7, 8; Doc. No. 190, at 2). In addition, the plaintiff takes issue with Vance's own damages calculation.

## IV. DISCUSSION

### A. Vance's Critiques of Price's Analysis

Regarding Vance's opinions about Price's valuations, the plaintiff argues that Vance "fails to cite any reliable data source to justify his opinions," instead relying on "snippets from five opinion news articles, published online, none of which purport[s] to be scholarly and none of which cite[s] legitimate data sources." (Doc. No. 190, at 3.) In addition, he argues that Vance's opinions are fatally flawed, insofar as he is clearly operating under the misimpressions that (1) Rieves' business was a "brick-and-mortar, local, storefront retailer" of CBD products, when it was actually "a manufacturer, wholesaler, and online retailer";[1] and (2) that it only sold locally and was competing on a local level, when Rieves testified in his deposition (actually quoted by Vance) that only a small percentage of his sales were to Tennessee residents. (*Id.* at 3–5.) On this basis, the plaintiff argues that Vance's "opinion that [the plaintiff's business] should only be compared to local retail brick-and-mortar businesses is not supported by the record or any of the documents relied upon by Vance and is insufficiently reliable to be considered by the jury." (Doc. No. 189, at 6.)

The court finds that Vance's fundamental misconception of Rieves' business as a small brick-and-mortar store that did some online business undermines and renders unreliable his

---

[1] *See, e.g.*, Doc. No. 190-2, at 5 ("Although Mr. Rieves also sold products online, his brick-and-mortar store was being negatively affected by the boom in competition.").

5

critiques of Price's analysis. His mischaracterization of the business establishes a lack of understanding of the type of business at issue, where its customers were located, and who its actual competitors or comparators were. For instance, Vance challenges Price's analysis as faulty because it does not address the differences between "micro-level environment for small retail stores" and the "macro-level sales considerations of manufacturers of CBD products." (*See* Doc. No. 190-2, at 3.) As the plaintiff points out, Rieves' business was not a small retail store and was, in fact, a manufacturer.

Moreover, as the plaintiff also points out, the article cited by Vance in support of his assertion that these types of establishments operate in different environments is simply an online article by "startup consultant" that outlines very generally "5 variables . . . every business owner should pay attention to, since they all affect how—and what—consumers buy," including competition, political climate, "state of the economy," trends, and technology. (*See* Doc. No. 190-8, cited at Doc. No. 190-2, at 22, Article 22 (App. 1).) Similarly, Vance critiques Price's growth projections as "miraculous," but he does not provide any basis for challenging those projections. In fact, one of the articles he cites references a "recent study out of Boulder, Colo[rado], (naturally) [that] estimated that the market for CBD products will increase 10-fold in the next five years." (Doc. No. 190-4, at 2, cited at Doc. No. 190-2, at 22, Article 18 (App. 1).)

Vance critiques the Price Report for "fail[ing] to consider the competition in the area in the damages analysis" (Doc. No. 190-2, at 8), but, again, the plaintiff testified that he did not depend on local business and that, in fact, a very small percentage of his business came from Tennessee. Moreover, although Vance lists 52 retail establishments in Smyrna selling CBD products, he does not indicate whether this was preexisting or new competition.

6

Finally, the plaintiff objects to Vance's critique of Price for purportedly failing to consider Mr. Rieves' lack of capital and credit in the damages analysis. In support of this critique, Vance cites an online article by CNBC.com outlining eleven common reasons small businesses fail, one of which is "empty pockets" resulting from "poor cash flow." (*See* Doc. No. 190-7, at 2–3, cited at Doc. No. 190-2, at 22, Article 21 (App. 1).) The problems engendered by poor cash flow, however, are self-evident, and, as the plaintiff points out, Vance fails to acknowledge that Rieves' cashflow and credit problems are alleged to have stemmed directly from the defendants' seizure of his assets and shuttering his business twice. Moreover, the cited article is not scholarly and does not conduct any type of particularized analysis.

The court finds, in short, that all of Vance's critiques of Price's analysis are unreliable and inadmissible as a result of Vance's mischaracterization, or misunderstanding, of the type of business at issue and as a result of his reliance on non-scholarly and only tangentially relevant online articles. These articles, likewise, are inadmissible.[2] More to the point, Vance's critiques of the Price Report are largely a matter of common sense. Defense counsel does not need an expert to cross-examine Price regarding perceived inadequacies and oversights in his opinions.

B. **Vance's Damage Calculation**

Vance also offers his own valuation of the plaintiff's damages, which is premised upon his analysis of the plaintiff's actual business income and expenses for a period of eight months prior to the initial seizure in September 2017, but he actually only uses the income figures for the three months immediately preceding the seizure from which to project future earnings and, from there, the "alleged damages over the same 25 month as in the Tom Price report that spans from September

---

[2] This includes documents 18–22 in Vance's Appendix 1, Doc. No. 190-2, at 22.)

7

2017 through September 2019." (Doc. No. 190-2, at 10-11.).[3] His analysis presumes no increase in business over time, due to "the negative trendline, lack of capital and the tremendous increase in competition in the local area and nationally, among the other factors." (Doc. No. 190-2, at 10.) He also explains why he discounts the plaintiff's claim of $91,000 in damages resulting from the seizure of inventory and materials as essentially double-dipping. He calculates the plaintiff's total damages arising from the defendants' actions as $319,380 (as compared to Price's assessment of total lost income at the "gross profit level" of somewhere between $1.27 million and $2.33 million).

The plaintiff seeks to exclude Vance's damages calculation as unreliable, because it only uses eight months of data, even though the plaintiff's yearly earnings go back to 2015, as a result of which Vance's projections were based upon a negative growth trend (for the months of July through September 2017), rather than an upward trend that would have been apparent if he had used yearly earnings or even earnings for the entire eight months he purported to have reviewed. (Doc. No. 190, at 10.) The plaintiff also critiques the Vance Report for failing to take into account significant, if not extreme, market growth for CBD products generally, failing to perform any analysis of the impact of increased competition, and failing to explain why low capital on top of these other matters would have affected the plaintiff's business's ability to grow over the next 25 months.

The court finds that the plaintiff's critiques of Vance's damage calculation go to their weight rather than their admissibility. As stated above, "rejection of expert testimony is the exception, rather than the rule." *Scrap Metal Antitrust Litig.*, 527 F.3d at 530. "Vigorous cross-

---

[3] Vance's calculation of the business expenses is based on his analysis of expenditures from "January 2017 through August 2017 as the dollar amount of expenses was fairly consistent during these months." (Doc. No. 190-2, at 11.)

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Vance's damage calculation is based upon his review of data supplied by the plaintiff and mathematical equations based on that data. His assumptions projecting no growth for the plaintiff's business are based on his own observation of the trendline for the plaintiff's business for the last three months for which data were available. The plaintiff may challenge that assumption and cross-examine Vance about it, but his damages calculation is nonetheless based on observable facts and data and, as such, has a reasonable factual basis. *See Ramer*, 883 F.3d at 680.

While the plaintiff remains free to cross-examine Vance about the assumptions on which his analysis was based and his ultimate conclusion, his challenges to Vance's damage calculation go to their weight rather than their admissibility. Jurors will not be presented with inaccurate facts. Rather, they will be presented with a calculation premised upon assumptions that the jury may or may not agree with. The motion to exclude Vance's damage calculation altogether, however, will be denied.

## V. CONCLUSION AND ORDER

For the reasons set forth herein, the plaintiff's Motion in Limine #4 – To Exclude Expert Testimony of Defendants' Retained Expert Robert Vance (Doc. No. 189) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED**, insofar as it seeks to exclude the opinions set forth in the first part of the Vance Report that critiques the Price Report and to exclude the five articles cited in support of those opinions. The motion is **DENIED**, insofar as it seeks to excludes Vance's calculation of the plaintiff's damages.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge

9

Case 3:18-cv-00965   Document 256   Filed 02/02/24   Page 9 of 9 PageID #: 3034